**James LONGSHORE, Respondent,**

v.

**Charles NORVILLE, Appellant.**

**No. ED 80621.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 10, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 14, 2003.

Michael Ferry, St. Louis, MO, for appellant.

Gregory G. Fenlon, St. Louis, MO, for respondent.

## OPINION

JAMES R. DOWD, Judge.

Charles Norville appeals a judgment entered against him for conspiring with his daughter to defraud her ex-husband of maintenance payments after daughter's remarriage. The trial court entered judgment on a jury verdict in favor of ex-husband, James Longshore, and against Mr. Norville in the amount of $56,157.50. On appeal, Norville contends: (1) that the trial court erred in denying his motion to dismiss for lack of personal jurisdiction because his contacts with Missouri were insufficient to satisfy the due process requirements of Missouri's long-arm statute; (2) that the trial court erred in denying his motion to dismiss on grounds of forum non conveniens; and (3) that the trial court erred in awarding pre-judgment interest as part of the damages calculation. We affirm.

Longshore, a Missouri resident, sued his ex-wife, Charlotte Stephens, and her parents, Louise and Charles Norville, all three Florida residents. His petition alleged that the defendants agreed and conspired to defraud him by using the U.S. mail in a scheme designed to conceal ex-wife's remarriage so that Longshore would continue to make maintenance payments.

Norville does not challenge the sufficiency of the evidence at trial. We therefore examine the allegations in ex-husband's petition and the affidavits filed in a light most favorable to the verdict and the court's retention of personal jurisdiction over Norville. Ex-husband's petition alleged the following: that his marriage to ex-wife ended pursuant to a Missouri De-

cree of Dissolution of Marriage and Order of Maintenance entered in 1979; that the decree ordered him to pay ex-wife the sum of $125.00 per week as maintenance; that ex-wife married Robert Stephens on December 5, 1990; that the defendants concealed ex-wife's remarriage; that the defendants conspired and agreed to defraud ex-husband which resulted in his continuing maintenance payments until March, 1997. Plaintiff's action sought to recover $40,500.00 in maintenance payments made after the remarriage plus pre-judgment interest and punitive damages.

On March 7, 2000, the trial court denied Norville's motion to dismiss for lack of personal jurisdiction. At Mr. Norville's request, in December, 2000, the trial court appointed him as guardian ad litem for Mrs. Norville because she was in poor heath.

On December 27, 2000, the Norvilles filed a motion to dismiss for forum non conveniens, based upon Mrs. Norville's poor health and the need for Mr. Norville to care for her. The trial court denied the motion to dismiss, finding Norville's counsel could depose the defendants—telephonically or otherwise—and use the depositions in lieu of live testimony at trial. Counsel for Norville and ex-husband took the deposition of Mr. Norville by telephone. Prior to trial, plaintiff dismissed his claim against Louise Norville without prejudice. Ex-wife filed no answer and did not defend the action.

Jury trial began on September 24, 2001. Plaintiff testified that he did not know his ex-wife had remarried in 1990. He continued to send ex-wife's maintenance checks to her at 12525 Lockwood Drive, St Louis until November 27, 1991, after which ex-wife asked him to mail the check to her at her parents' home in Florida. Plaintiff mailed $250 maintenance checks bi-weekly to ex-wife at the Florida residence of her parents, defendants Charles and Louise Norville, from December 18, 1991 through July 11, 1996, on Nova Scotia Drive, and from July 29, 1996 until March 3, 1997, on Blue Teal Way.

The Norvilles received 131 identical envelopes with ex-wife's maintenance checks, one every two weeks for approximately six years. The checks were addressed to ex-wife as "Charlotte Longshore," as she was named during her marriage to plaintiff. Plaintiff mailed the envelopes from Missouri to Florida, where ex-wife collected them from the Norvilles. Ex-wife then returned the endorsed checks to Missouri for deposit into her St. Louis bank account.

Plaintiff ceased sending payments in March, 1997, when he discovered through the internet that his ex-wife had remarried.

Ex-husband testified without objection to the amount of maintenance he had paid including a computation of pre-judgment interest. Plaintiff's exhibit 10 contained the same computation of the plaintiff's claimed pre-judgment interest and was also admitted without objection.

Defendant Norville did not attend the trial. However, his counsel and plaintiff's counsel read portions of his deposition to the jury. In that testimony, Norville admitted his daughter told him she received alimony from ex-husband and that he and his wife Louise attended their daughter's marriage to Robert Stephens on December 5, 1990 in Las Vegas, Nevada. In the early 1990's, the Norvilles made a loan of over $54,000.00 to their daughter and her new husband, Robert Stephens. Ex-wife regularly made $500 per month payments to the Norvilles as interest on the debt. The Norvilles lived approximately a half mile from their daughter, visited her weekly, saw her mailbox and received no mail

for her other than the mail from her ex-husband. In early 1998, Norville received notice from the Bankruptcy Court that his daughter was declaring bankruptcy, and that he was listed as a creditor because of the $54,000 loan. The bankruptcy court discharged daughter's debt to Norville. After Norville discovered that his daughter's debt to him was discharged in bankruptcy he sent a letter to the state of Missouri addressed to the ex-husband dated November 29, 1998, informing him of ex-wife's 1990 remarriage. Plaintiff's counsel read the following portions of that letter to the jury:

"Charlotte Longshore and Robert Stephens were married December 5th, 1990, Las Vegas, Nevada." And the second paragraph says, "Should you or your lawyer think I may ·be of help to you in this matter I can be reached at 392 Blue Teal Way, Plant City, Florida," followed by a sip [sic] code. And then he says, "Sincerely, Charles Norville."[1]

The jury returned a general verdict in favor of the plaintiff and against Charles Norville in the amount of $56,157.50. The trial court then entered judgment on the jury's verdict and denied Norville's motion for a new trial or to amend the judgment. On April 22, 2002, the trial court entered its final Order and Judgment against defendant ex-wife, found her in default and entered judgment in plaintiff's favor and against ex-wife on counts I and II for a total judgment in the amount of $81,626.00.

STANDARD OF REVIEW

■■■ Whether a trial court has acquired personal jurisdiction of a defendant is a mixed question of law and fact. The inquiry into the court's jurisdiction focuses on whether a plaintiff has set out sufficient prima facie allegations in his petition that, if believed, satisfy principles of due process. *Schilling v. Human Support Services,* 978 S.W.2d 368, 370 (Mo.App.1998), *citing State ex rel. William Ranni Assocs. v. Hartenbach,* 742 S.W.2d 134, 137 (Mo. banc 1987). While this question of law is independently reviewed on appeal, the judgment of the trial court will be upheld absent a misstatement or misapplication of the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■■■ Plaintiff, ex-husband, has the burden to prove the existence of personal jurisdiction over all defendants. *Schilling, supra,* 978 S.W.2d at 370. In determining the question of personal jurisdiction the trial court may consider in addition to the allegations in the petition, affidavits, oral testimony, and deposition testimony. *Schilling, supra,* at 370, *citing Chromalloy Am. Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 4 (Mo. banc 1997). The trial court has discretion to believe or disbelieve evidence submitted when deciding the question of personal jurisdiction. However, when determining the issue of personal jurisdiction, the court cannot consider the merits of the underlying action. *Schilling, supra,* at 370.

PERSONAL JURISDICTION

In his first point of error, Norville claims the trial court never acquired personal jurisdiction of him because he committed no acts in, nor had other minimum contacts with Missouri. He also denies that he agreed to conspire to defraud a Missouri resident.

■■■ In order to subject Norville to the jurisdiction of the Missouri courts under Missouri's long arm statute, Mo.Rev.Stat. Section 506.500 (2001), ex-husband must meet two requirements. First, the suit must arise out of the activities enumerated in the statute; and second, the defendant

---

1. Neither party made this letter part of the Legal File.

must have contacts with Missouri sufficient to satisfy due process requirements. *Schilling, supra,* at 370–371.

The plaintiff contends the trial court had jurisdiction under Missouri's long arm statute, Mo.Rev.Stat. Section 506.500 (2001), which provides in pertinent part:

1. Any person ... whether or not a citizen or resident of this state, ... who in person or through an agent does any of the acts enumerated in this section, thereby submits such person ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

. . . .

(3) The commission of a tortious act within this state;

. . . .

3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

*Id. (emphasis added)*

■ Initially, then, we must determine if the petition pleads the commission of a tortious act by Norville within this state. The tortious act section of Missouri's long arm statute includes extraterritorial acts that produce consequences in the state. *Schwartz & Assoc. v. Elite Line, Inc.,* 751 F.Supp. 1366, 1369 (E.D.Mo.1990). We find that ex-husband has sufficiently alleged the commission of an extraterritorial tort with damage occurring in Missouri. But this alone is not sufficient.

■ Due process also requires that we determine whether Norville had minimum contacts with Missouri such that suit against him "does not offend 'traditional notions of fair play and substantial justice.'" *Schilling, supra, quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). The due process analysis looks to the foreseeability that the defendant's conduct and connection with the foreign state is such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In *International Shoe, supra,* the United States Supreme Court held that a Missouri corporation had sufficient minimum contacts for a Washington state court to take personal jurisdiction. There the court held:

[T]he activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question.

*International Shoe, supra,* 326 U.S. at 321, 66 S.Ct. at 160.

■ Missouri courts list the following factors to be considered in determining whether a non-resident defendant has sufficient minimum contacts to warrant exercise of jurisdiction:

(1) the nature and the quality of the contact;

(2) the quantity of those contacts;

(3) the relationship of the cause of action to those contacts;

(4) the interest in Missouri in providing a forum for its residents; and

(5) the convenience or inconvenience to the parties.

*Schilling, supra,* 978 S.W.2d at 371. The *Schilling* court found: "the primary factors are the first three, while the last two deserve only secondary importance." *Id.*

■ We find *Schilling* controlling and logically sound on the present facts. In that case, defendant argued that, because the part the defendant manufactured was

not the part of the wheelchair lift that malfunctioned, there could be no personal jurisdiction of the defendant-manufacturer. The plaintiff disagreed and alleged the part the defendant manufactured was a cause of the accident. The court found the defendant's argument "misplaced because a response requires a trial on the merits." *Id.* 978 S.W.2d at 371[6,7]. In order to prevail on the motion and obtain personal jurisdiction over the defendant, the plaintiff was "only required to make a prima facie showing of the validity of their claim." *Id.*

Norville cites *State ex rel. Ranni Assoc. v. Hartenbach, supra,* which is, however, unlike the present case. In Ranni, the critical fact that was conclusively disproved on the motion to dismiss was that the insurance agent over whom long-arm jurisdiction was sought had no duty to the plaintiff. As a result, the *Ranni* court refused to find that the Missouri courts acquired personal jurisdiction of the agent under the long-arm statute. Id. 742 S.W.2d at 137–141. In Ranni, no jury trial on the merits was required to determine the truth of the factual allegations from which to base the imposition of a duty running from the defendant to the plaintiff. *Id.* at 136–137. Here, Norville failed to present undisputed, dispositive facts contradicting the allegations contained in the petition.

■ Ex-husband alleged that defendant Norville agreed to defraud him and participated in a conspiracy which induced plaintiff to continue to mail maintenance payments for over six years to ex-wife at Norville's house even though she was no longer eligible for marital maintenance due to her remarriage. In his affidavit, ex-husband swore that Norville knew of ex-wife's remarriage, concealed that fact from him, and swore that Norville knew that the envelopes were maintenance payments.

We find these allegations combined with Norvilles act of mailing the letter that revealed the fraud to the victim in Missouri sufficient to support the exercise of personal jurisdiction under the Missouri long-arm statute. If true, the allegations constitute fraud on a Missouri resident, and on the Missouri court with jurisdiction over the maintenance decree. Mo.Rev. Stat. Section 506.500.1(3) (2001); *Schwartz, supra,* 751 F.Supp. at 1369; *Schilling, supra,* 978 S.W.2d at 371. While The November 1998 letter is distinguishable from a mail solicitation sent into Missouri with the design to commit a fraud it is no less of a meaningful contact with this state. By mailing the letter into Missouri Norville provides the victim the evidence of the corpus of the crime the fraud itself. Norville's effort to reveal his co-conspirator's fraud gives the Missouri courts its jurisdiction over him.

■ We reject Norville's argument that, without direct proof, he should not be charged with knowledge of the legal significance of his daughter's remarriage upon her right to receive maintenance.

Fraud takes many forms. In 1875, our Missouri Supreme Court recognized that fraud rarely admits of direct proof but, once the design is understood, the circumstances surrounding the fraud make its existence apparent. In *Burgert v. Borchert,* 59 Mo. 80 (1875), the court held that fraud is seldom capable of direct proof, and "has to be established by a number and variety of circumstances, which, although apparently trivial and unimportant, when considered singly, afford, when combined together, the most irrefragable and convincing proof of a fraudulent design." *Id.,* 59 Mo. at 83–84. *Also see Chesus v. Watts,* 967 S.W.2d 97, 113 (Mo.App.1998).

■ We need not determine if Norville's "ignorance" of the effect of his

daughter's remarriage negates his culpability because his letter to ex-husband, combined with the reasonable inferences to be drawn from the circumstances surrounding that letter, shows he was not ignorant and that he had guilty knowledge that her remarriage terminated ex-husband's duty to pay maintenance. In any event, it is axiomatic that ignorance of the law cannot serve as a shield from liability for fraud. *See Watson v. Harris,* 435 S.W.2d 667 (Mo.1968).

Finally, proof at trial was consistent with the allegations in the petition and in ex-husband's affidavit, and confirms the correctness of the trial court's exercise of personal jurisdiction over Norville. The Norville letter to ex-husband informing him of the remarriage and offering to help ex-husband's attorneys clearly supports an inference that Norville knew the continued receipt of maintenance payments was fraudulent. It was not until Norville discovered that his daughter discharged his debt in bankruptcy that he wrote to plaintiff and revealed the remarriage. It can be inferred from the letter that he knew the mail-drop agreement with ex-wife was designed to conceal her remarriage, which in turn kept the maintenance spigot flowing. It can be inferred from Norville's testimony that he benefited from the scheme because he regularly received $500 debt repayment from her upon her receipt of the maintenance checks in the same amount from plaintiff.

The trial court, possessing discretion to believe or disbelieve the evidence regarding personal jurisdiction, did not accept Norville's affidavit as true, presumably because it either defied reason under these circumstances or because it would have required a trial on the merits to determine whether Norville or ex-husband was telling the truth. *Schilling, supra,* at 371.

■ Examination of the factors enumerated in *International Shoe, supra,* and its progeny, cause us to conclude that it was not error to retain jurisdiction in this case. We find the allegations and proof submitted sufficient to conclude that there existed a deliberate agreement to defraud a Missouri resident, that the acts in support of that agreement were systematic and continuous in nature, that a Missouri court had exercised jurisdiction over the dissolution of marriage and the maintenance payments, and, finally that Norville received a financial benefit in Florida as a result of the fraud in Missouri. These facts satisfy the requirements of due process as expressed in *International Shoe.* We conclude that personal jurisdiction over Norville was proper.

FORUM NON–CONVENIENS

■ Norville's second point on appeal challenges the trial court's denial of his motion to dismiss on grounds of forum non-conveniens, arguing error because the relevant factors "weighed heavily in favor of granting the Motion" and that denial of his motion was "unjust and oppressive." Norville fails to cite the appropriate standard of review.

■ The decision of a trial court in denying a motion to dismiss on the grounds of forum non-conveniens is reviewed under an abuse of discretion standard. The case of *Anglim v. Missouri Pacific R. Co.,* 832 S.W.2d 298, 302–303 (Mo. banc 1992) articulates the necessary standard to test a trial court's refusal to grant a motion under the forum non-conveniens doctrine. It reads:

> Also on appeal, discretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion..... Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circum-

stances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Id.* (citations omitted). Norville has not met the burden of showing an abuse of discretion. First, the trial court's ruling on the motion to dismiss specifically imposed two conditions "designed to address the inconvenience to defendants Norville." Defense counsel was allowed to depose the defendants and use the depositions in lieu of live testimony, and defense counsel was allowed to have a court reporter in St. Louis rather than in Florida. This was an option that the defendant utilized. Second, defendant did not request that the court make findings of fact in support of its decision to deny the motion. The record here does not establish that the trial court ruled "clearly against the logic of the circumstances then before the court," *Anglim, supra* 832 S.W.2d at 302–303. Lacking specific findings of fact, we are without further basis upon which to review that ruling. *Kuiper v. Busch Entertainment Corp.,* 845 S.W.2d 697, 699–700 (Mo.App. 1993). Accordingly, the denial of the motion to dismiss for forum non-conveniens is affirmed.

PRE–JUDGMENT INTEREST

 Norville's final point on appeal alleges that the trial court committed plain error in denying his post-trial motion to delete the award of pre-judgment interest. He claims that plaintiff submitted no evidence that he made a demand as required by Mo.Rev.Stat. section 408.040 (2001). Norville does not, however, deny notice of this element of damages, which was easily ascertainable in this case. Norville did not object at trial to the testimony and exhibit regarding pre-judgment interest damages, nor to plaintiff's jury argument thereon. Nor did he object to the general damages instruction. Pre-judgment interest was tried by consent. Norville cites no case for the proposition that a submission allowing a jury to award pre-judgment interest constitutes plain error and we therefore decline to consider this point. Rule 84.13.

The judgment of the trial court is, in all respects, affirmed.

MARY R. RUSSELL, Presiding Judge, and CLIFFORD H. AHRENS, Judge, concur.