**Carolee NOBLE and Leo Noble and Jo Ann K. Nilges and Wayne Nilges, Appellants,**

v.

**SHAWNEE GUN SHOP, INC., d/b/a The Bullet Hole, Respondent.**

Nos. WD 71254, WD 71255.

Missouri Court of Appeals, Western District.

April 6, 2010.

Application for Transfer Denied Aug. 31, 2010.

Randy W. James and Jessica M. Agnelly, Lee's Summit, MO, for Appellants.

Kelly A. Ricke and Nicholas J. Meinheit, Overland Park, KS, Anthony Pisciotti, Florham Park, NJ, for Respondent.

Before Division III: KAREN KING MITCHELL, Presiding Judge, and JAMES EDWARD WELSH and MARK D. PFEIFFER, Judges.

KAREN KING MITCHELL, Presiding Judge.

This is an appeal from the Circuit Court of Jackson County, Missouri's ("trial court") dismissal of the plaintiffs' actions based on lack of personal jurisdiction over the defendant Shawnee Gun Shop, Inc., d/b/a The Bullet Hole ("Gun Shop"). We reverse the judgment of the trial court and remand.

## Factual and Procedural Background

On April 24, 2007, David W. Logsdon ("Logsdon"), a Missouri resident, entered Gun Shop's firearm and ammunition retail pro shop and shooting range located in Overland Park, Kansas, four miles from the Missouri state line. Logsdon purchased firearm magazines [1] from Gun Shop with a credit card he had stolen from Patricia Reed, a female neighbor and fellow Missouri resident whom Logsdon is suspected of murdering. The card had Patricia Reed's name on its face.

On April 29, 2007, Logsdon apparently used the magazines he purchased from Gun Shop in a shooting rampage during which he shot both Luke A. Nilges and Leslie Noble Ballew, each of whom was in his or her car outside of the Ward Parkway shopping center in Kansas City, Missouri. Both Nilges and Ballew were killed.

The parents of Nilges (the Nilgeses) and Ballew (the Nobles) each filed lawsuits against Gun Shop in the trial court seeking damages for the deaths of their children resulting from Gun Shop's allegedly negligent sale of the magazines to Logsdon. Both the Nilgeses and the Nobles also filed separate lawsuits in the state of Kansas to preserve their rights under the Kansas savings provisions should their Missouri actions fail for want of personal jurisdiction over Gun Shop. Both the Nilgeses and the Nobles attempted to voluntarily dismiss their claims in the respective Kansas cases without prejudice pending the outcome of their Missouri actions. The Kansas judge in the Noble court allowed the voluntary dismissal. The Kansas judge in the Nilges case did not and requested that the parties brief Gun Shop's intervening motion to dismiss for failure to state a claim. The Kansas judge in the Nilges action granted Gun Shop's

---

1. A magazine is a "compartment in some types of firearms, often a small detachable box, in which cartridges are held to be fed into the firing chamber." *The American Heritage Dictionary* 1050 (4th ed.2006). There is no evidence that cartridges were sold with the magazines.

motion to dismiss[2] and that matter is pending appeal in Kansas.

Meanwhile, after Gun Shop filed motions to dismiss in the Missouri trial court in both the Nilges and Noble actions, the cases were consolidated for the purpose of determining jurisdiction. On January 27, 2009, the plaintiffs filed motions to conduct discovery on the issue of *in personam* jurisdiction. The motion was granted, and the plaintiffs served a request for production of documents and things on February 5, 2009. Gun Shop filed its responses and objections on March 6, 2009, and plaintiffs responded to Gun Shop's motion to dismiss.

On April 2, 2009, plaintiffs sought additional discovery, specifically, a corporate representative deposition, a deposition of the employee who sold the magazines to Logsdon, requests for admissions, and interrogatories. The trial court granted the request with respect to written discovery only. Gun Shop responded on May 19, 2009. Plaintiffs asked the trial court to compel Gun Shop to answer the written discovery more fully. However, the trial court denied most of the plaintiffs' requests, finding that the discovery sought pertained more to the merits of the plaintiffs' cause of action and not to the jurisdictional issue.

On July 10, 2009, Gun Shop's motion to dismiss was granted. The trial court found that the causes of action did not arise from the commission of a tortious act within the state of Missouri, as required by the Missouri long-arm statute, section 506.500.[3] This appeal followed.

## Legal Analysis

This court first must address Gun Shop's argument that these proceedings are moot because of the order dismissing the Nilges case in the Kansas state court. Gun Shop claims that the dismissal of the Nilges matter by the Kansas District Court for failure to state a claim serves to bar the plaintiffs' actions in this case under the doctrines of *res judicata* and collateral estoppel. *Res judicata* and collateral estoppel are affirmative defenses that normally must either be raised in an answer, by an amendment to the pleadings, or in a motion to dismiss. *Patrick V. Koepke Constr., Inc. v. Woodsage Constr. Co.*, 119 S.W.3d 551, 555 (Mo.App. E.D.2003). Also, for *res judicata* and collateral estoppel to apply, there must have been a final prior judgment on the merits deciding the same claims or issues. *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 185 (Mo.App. W.D.1999). In this case, Gun Shop could not raise the issues of *res judicata* and collateral estoppel before the trial court because the Kansas order dismissing the Nilges claim was not issued until after the Missouri trial court had issued its judgment dismissing the matter for lack of personal jurisdiction. In other words, when the matter was before the Missouri trial court, there had been no final judgment on the merits in Kansas. This is why Gun Shop offers *res judicata* and collateral estoppel to this court as issues pertaining to mootness.

The order dismissing the Nilges case in the Kansas court for failure to state a claim constitutes a final judgment

**2.** Nothing in the record indicates why the Kansas judge in the Nilges action did not allow the voluntary dismissal; however, as noted below, the Missouri trial court had dismissed the Nilgeses' claim for lack of jurisdiction before the motion to dismiss for failure to state a claim was fully briefed and argued in the Kansas trial-level court.

**3.** All statutory references will be to RSMo 2000, as updated through the 2009 cumulative supplement, unless otherwise indicated.

on the merits under Kansas law. *Wirt v. Esrey*, 233 Kan. 300, 662 P.2d 1238, 1246 (1983). Under Missouri law, a judgment on the merits at the trial-court level is considered a final judgment for purposes of *res judicata* and collateral estoppel, even if the appeal of that judgment is still pending. *Consumers Oil Co. v. Spiking*, 717 S.W.2d 245, 251 (Mo.App. W.D.1986). We note, however, that in *Spiking* we had already affirmed the "pending" collateral trial-court decision when we took up the *res judicata* matter, so the "finality" of the collateral decision did not change after the fact.[4] *Id.* at 248 n. 4. The collateral case had also been affirmed by the time the appellate court took up the *res judicata* matter in *Koepke Construction*, 119 S.W.3d at 556. Similarly, in two other Missouri cases holding that the trial-court decision should be considered final pending appeal, the appeals of the two collateral cases were consolidated and affirmed together. *See Atlanta Cas. Co. v. Stephens*, 825 S.W.2d 330, 331 (Mo.App. W.D.1992); *Geringer v. Union Elec. Co.*, 731 S.W.2d 859, 861 (Mo.App. E.D.1987). In all of these cases, by the time the appellate court had decided that the lower-court collateral decision was "final" and thus served to justify *res judicata* or collateral estoppel, the collateral matter had, in fact, become final; there was no real chance of reversal. We have found no other case with the unique timing issues presented in the cases before us, where one lower-court dismissal (here, in Missouri), pending appeal, occurred prior to consideration of a motion to dismiss by a second trial court (Kansas), and then that second court's decision was held to bar reversal of the first trial-court's decision (Missouri), all while there was still a possibility that the second

trial-court's decision could be reversed on appeal (Kansas).

Further complicating matters is that the Kansas order, on which Gun Shop relies, only dismissed the Nilgeses' cause of action. The Nobles also brought an action in Kansas to preserve their rights under the Kansas savings statute, but the judge in their case allowed them to dismiss voluntarily, without prejudice. Accordingly, *res judicata*, or claim preclusion, would not apply as to the Nobles, who have never had a judgment on the merits issued against them. Also, although Gun Shop's brief mentions the term collateral estoppel, it is devoid of any argument or analysis as to how it could possibly apply to either plaintiff in this case. Because the Nobles' claims, at least, have not successfully been shown to be barred by *res judicata* or collateral estoppel, both affirmative defenses which must be properly pleaded, we find that this appeal is not moot and proceed to analyze whether personal jurisdiction exists over Gun Shop.

## Personal Jurisdiction

 The plaintiffs' first point on appeal is that the trial court erred in dismissing their case for lack of personal jurisdiction over Gun Shop. When reviewing a trial court's dismissal of an action for lack of personal jurisdiction, " 'all facts alleged in the petition are deemed true and the plaintiff[s are] given the benefit of every reasonable intendment.' " *Hollinger v. Sifers*, 122 S.W.3d 112, 115 (Mo.App. W.D. 2003) (quoting *Shouse v. RFB Constr. Co.*, 10 S.W.3d 189, 192 (Mo.App. W.D.1999)). Once the defendant raises the issue of lack of personal jurisdiction, the burden shifts to the plaintiffs to make a *prima facie* case that personal jurisdiction exists over the

---

4. The appellants in the *Spiking* case wanted this court to reverse the later trial-court decision because the collateral appeal was still pending *at the time* the trial court ruled on the preclusion issue.

defendant. *Id.* The sufficiency of the plaintiffs' showing is a legal question that this court reviews independently. *Id.*

The plaintiffs in this case do not allege that the trial court had general jurisdiction over Gun Shop. Instead, they allege that the trial court had specific jurisdiction pursuant to Missouri's long-arm statute, section 506.500. To establish specific *in personam* jurisdiction over a defendant, the plaintiff must show: (1) that the long-arm statute applies to the defendant, and (2) that the principles of due process are satisfied. *Longshore v. Norville*, 93 S.W.3d 746, 751–52 (Mo.App. E.D.2002). Many Missouri courts, however, have merged the analysis of these two criteria. *See, e.g., Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318–19 (Mo. banc 2000) and *State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31, 31–35 (Mo. banc 1976) (applying due process principles to determine if the criteria for the application of the long-arm statute had been met). Other courts have assumed that the long-arm statute applies and have gone straight to the minimum-contacts analysis. *See State ex rel. Wichita Falls Gen. Hosp. v. Adolf*, 728 S.W.2d 604, 606 (Mo.App. E.D.1987). This assumption may be defended based upon the Missouri Supreme Court's determination that the Missouri long-arm statute was "intended to extend jurisdiction to the limits permissible under the due process clause of the Fourteenth Amendment." *Id.* (citing *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970)); *see also Webb ex rel. J.C.W. v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009) (reiterating that the long-arm statute, as applied, "expand[s] the state courts' jurisdictional reach to the

maximum extent permitted by the federal constitution"); *State ex rel. Auburn Ford, Inc. v. Westbrooke*, 18 S.W.3d 143, 145–46 (Mo.App. S.D.2000) (citing *Deere* and then proceeding to the due-process analysis).

The majority of the relevant court opinions, however, have at least attempted to analyze whether the long-arm statute applies before proceeding to due-process analysis. We believe that this is the appropriate approach. Because the long-arm statute enumerates several different circumstances under which personal jurisdiction would attach (such as conducting business or committing a tort), we find that the legislature most likely did not intend "to confer jurisdiction in all cases that the constitution would permit, but that the specific *categories* of cases over which the legislature did extend jurisdiction should be construed to include all the cases those categories rationally could be understood to include to the extent that due process would permit." 1 ROBERT C. CASAD & WILLIAM B. RICHMAN, JURISDICTION IN CIVIL ACTIONS § 4–1[1][b] (3d ed.2004) (emphasis added). A contrary interpretation would effectively ignore the language of the long-arm statute.[5]

The trial court in this case did consider the Missouri long-arm statute and, having found that it did not apply to Gun Shop, did not proceed to conduct the due-process analysis. The statute provides, in relevant part:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if any individual, his personal representative,

---

**5.** We do acknowledge, however, that there will often be significant overlap in the analysis of application of the long-arm statute and the analysis of minimum contacts, particular-ly in the cases involving extra-jurisdictional torts, where foreseeability is a factor in both determinations.

to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

....

(3) The commission of a tortious act within this state.[6]

For the statute to apply, the tortious act may occur outside of Missouri, so long as it "produces actionable consequences" in Missouri. *Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott,* 8 S.W.3d 893, 903 (Mo.App. W.D.2000); § 506.500. Some courts have required the Missouri consequences to have been "intentionally directed" toward Missouri, *see, e.g., Nelson v. Greenspan & Co.,* 613 F.Supp. 342, 345–46 (E.D.Mo.1985),[7] while others have not, *see, e.g., State ex rel. William Ranni Assocs. v. Hartenbach,* 742 S.W.2d 134, 139 (Mo. banc 1987); *Longshore,* 93 S.W.3d at 752. The most recent Missouri Supreme Court case applying the statute for an extra-territorial tort did not. *Bryant v. Smith Interior Design Group,* 310 S.W.3d 227, 231 (Mo. banc 2010). In any event, it appears that the showing required of the plaintiffs is less stringent when a product is placed in the stream of commerce than when the non-resident defendant is engaged in providing a service. *Hollinger,* 122 S.W.3d at 117.

As the plaintiffs point out, the tort alleged in *Nelson,* where the court found that the conduct had to be intentionally directed at Missouri, was an intentional tort (fraud), whereas the tort alleged in this action is negligence. The plaintiffs contend that this difference warrants a slightly different standard due to the differences in mental state required by the different torts—intended versus reasonably should have known. They argue that it does not make sense to require a plaintiff to prove that a defendant *intentionally* directed its mere negligence at Missouri plaintiffs. Instead, the plaintiffs argue that it should be sufficient to show that the defendant *knew or had reason to know* that the consequences of its negligence were likely to be felt in Missouri. We appreciate the logic of this argument, especially where, as here, the tort alleged involves a product placed in the stream of commerce as opposed to a service. The fact that Missouri's long-arm statute makes no distinction between intentional torts and negligence, as Gun Shop counters, is not fatal to the plaintiffs' position. Indeed, the statute is completely silent as to mental state for extra-territorial torts. Moreover, the statute does not only provide for jurisdiction over tortfeasors who commit *intentional* torts; it clearly covers negligence and strict liability as well.

We also find support for a more relaxed standard for negligence cases in reviewing

---

**6.** Originally, one of the plaintiffs also alleged that Gun Shop fell under subsection (1) of the statute, which covers any person who transacts business within the state. The plaintiff has abandoned this argument on appeal.

**7.** Gun Shop also cites several other cases in support of its position. We do not find that these cases, in fact, support Gun Shop's position. In *Capitol Indemnity Corporation,* 8 S.W.3d at 903, the court mentions the language Gun Shop cites, but it is dicta; in that case, the court found that no tort had occurred at all, within the state or otherwise. In *Childers v. Schwartz,* 262 S.W.3d 698 (Mo.

App. W.D.2008), the court did not analyze whether a tort had been committed, having found that no minimum contacts existed. *Longshore,* 93 S.W.3d at 751–52, as mentioned above, does not require the tortious conduct to have been purposely directed at Missouri plaintiffs. Finally, *Naegler v. Nissan Motor Co.,* simply found that the alleged tortious act had no Missouri consequences; the case involved a plaintiff who was injured in an automobile accident in Germany, in a car that had been purchased in Germany and had been manufactured in Japan. 835 F.Supp. 1152, 1156 (W.D.Mo.1993).

"dram shop" cases. In these cases, often a liquor store or tavern located in one state near the border of a neighboring state sells an excessive amount of alcohol to a patron who then drives across the state line and injures a plaintiff in the neighboring state. In several of these cases, the tavern has been found to be subject to the jurisdiction of the state where the injury occurs, although the taverns could not properly be seen as having *intended* for their patrons to cross the border and cause injury. *See, e.g., Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731, 734 (1985); *Lawson v. Darrington,* 416 N.W.2d 841, 844 (Minn.Ct.App.1987).

In *Lawson,* the tavern, located in Iowa several miles south of the Minnesota border, allegedly sold alcohol to an intoxicated person who then drove into Minnesota and injured his passenger in an automobile accident. 416 N.W.2d at 842–43. The court, without much analysis, determined that the Minnesota long-arm statute applied to the Iowa tavern and that, because the tavern advertised in Minnesota, due process allowed Minnesota to assert jurisdiction over the non-resident tavern. *Id.* at 843–45.

In *Ling,* a Missouri liquor store allegedly negligently sold liquor to a minor who then drove into Kansas and, in an intoxicated state, struck the plaintiff causing her injury. 703 P.2d at 732–33. The Kansas court found that long-arm jurisdiction under the "tortious act" prong of the Kansas statute applied to render the Missouri store subject to Kansas's jurisdiction, simply because the injury to the plaintiff occurred in Kansas. *Id.* at 734.

It appears to this court that the courts in these dram shop cases and others found that the fact that these businesses were located near the border and, in some cases, advertised to residents on both sides of the border, meant that the businesses knew or should have known (although the courts did not analyze their decisions using this wording) that their customers were likely to cross the border after patronizing the businesses. Therefore, it would be foreseeable that a sale originating from their businesses could have consequences in the neighboring state. We find that this standard is appropriate for determining whether the alleged cross-border-negligence of a defendant falls under Missouri's long-arm statute.

▮▮▮ The trial court dismissed the action based on its belief that any extraterritorial tort having consequences in Missouri "must have been deliberately designed to move into Missouri and injure the plaintiff." We hold that for actions where the tort alleged is negligence, at least in the context of a product having been placed in the stream of commerce and in which the defendant is regularly conducting business with Missouri residents, this requirement does not apply.[8] Accordingly, we find that the trial court erred in granting Gun Shop's motion to dismiss on this basis.

Applying foreseeability as the standard, we find that there were sufficient facts alleged by the plaintiffs to establish that Gun Shop reasonably knew or should have known that its allegedly negligent sale to Logsdon could have effects in Missouri. Gun Shop advertised to Missouri residents, sold products to Missouri residents, and encouraged Missouri residents to patronize its shooting range. A Missouri customer allegedly took the magazines Gun Shop sold him back to Missouri and fatally

---

**8.** Although after reviewing the recent *Bryant* case, it is not clear whether even intentional torts need to be "purposely directed" toward Missouri plaintiffs. *Bryant,* 310 S.W.3d at 234.

wounded the two Missouri victims using the magazines he purchased from Gun Shop. Thus, assuming their negligence claim is meritorious,[9] plaintiffs' petitions are sufficient to have alleged that Gun Shop committed a tortious act within the state of Missouri so that Gun Shop would be covered by Missouri's long-arm statute.

▉▉▉ After determining that the long-arm statute applies to the defendant, we must analyze whether due process would allow the court to assert jurisdiction as provided by the statute. Due process requires that a non-resident defendant have minimum contacts with Missouri such that a suit against it "does not offend traditional notions of fair play and substantial justice. The due process analysis looks to the foreseeability that the defendant's conduct and connection with the foreign state is such that the defendant should reasonably anticipate being haled into court there." *Longshore,* 93 S.W.3d at 752 (citation omitted) (internal quotations omitted).[10]

▉▉▉ In judging whether minimum contacts exist, Missouri courts look to "the relationship among the defendant, the forum[,] and the litigation." *Ranni,* 742 S.W.2d at 138 (citing *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). Specifically, we may, although we are not required to, consider five factors: (1) the nature and quality of the defendant's contacts with Missouri; (2) the quantity of the contacts with Missouri; (3) the relation of the cause of action to the contacts; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience of the parties. *Capitol Indem.,* 8 S.W.3d at 902 (setting out five factors); *see also Bryant,* 310 S.W.3d at 233, n.4 (five-factor analysis not required in Missouri).

Gun Shop sells guns, ammunition, and related equipment to Missouri residents. From 2004 to 2007, the year that the shootings occurred, between 8.05% and 11.63% of Gun Shop's firearm sales were to Missouri residents. Gun Shop also has accepted members of its shooting club from Missouri, and Missouri residents use its shooting range. Gun Shop does business with Missouri suppliers, and importantly, it advertises to Missouri residents periodically through a Kansas City area-wide newspaper and over Kansas City area radio stations.[11] It has advertised itself as the "Midwest's Largest Shooting Range," and "Kansas City's Largest Indoor Shooting Range," and has advertised that it has "Kansas City's Largest Selection of Handguns."[12] Also, Logsdon, the shooter, was a Missouri resident, the shootings took place in Missouri, and both victims whose deaths are the subjects of these lawsuits were Missouri residents.

We find that Gun Shop has had significant contacts with Missouri in that: (1) it actively solicits business from, and engages in substantial business with, Missouri residents; (2) one of the Missouri residents who patronized Gun Shop, perhaps pursuant to Gun Shop's advertising

9. This court makes no judgment as to the merits of plaintiffs' negligence claims, deciding only the jurisdictional issues at this time.

10. Once again, this analysis turns on consideration of the same facts considered in evaluating application of the long-arm statute. It may be that applying foreseeability under due process and "knew or should have known" under the tort provision of the long-arm statute effectively render these analyses indistinguishable.

11. The Kansas City metropolitan area spans the border between Missouri and Kansas and includes several counties in both states.

12. Gun Shop is not located in either Kansas City, Missouri or Kansas City, Kansas.

efforts, purchased the magazines from Gun Shop that were then moved into Missouri and used in the Missouri shootings; (3) both shooting victims were Missouri residents and, therefore, that Missouri has an interest in providing a forum for these plaintiffs; and (4) Missouri is not an inconvenient forum for the parties, as Gun Shop is located only four miles from the Missouri state line. While making no determinations as to the merits of the plaintiffs' cases, we do not find that it is unreasonable for Gun Shop to foresee that any allegedly negligent sales might have consequences in Missouri and, therefore, that Gun Shop should reasonably anticipate being haled into Missouri's courts. We thus find that the trial court erred in dismissing Gun Shop for lack of personal jurisdiction.

### Discovery Issues

For their second point on appeal, the Nilgeses and Nobles contend that the trial court erred in sustaining several of Gun Shop's objections to their discovery requests. We review the trial court's administration of the rules of discovery for abuse of discretion. *Mello v. Giliberto,* 73 S.W.3d 669, 673 (Mo.App. E.D.2002). A trial court only abuses its discretion when its ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 673–74 (internal quotations omitted). Plaintiffs do not allege that the trial court abused its discretion in sustaining Gun Shop's objections to their discovery requests.

Furthermore, a review of the record reveals that the trial court carefully considered each of the plaintiffs' discovery requests and attempted to address them in

fairness to the parties. In considering a motion to dismiss due to lack of personal jurisdiction, the trial court considers only the facts relevant to jurisdiction; it does not consider the merits of the underlying action. *Hollinger,* 122 S.W.3d at 115. Thus, discovery is permissible only as to the jurisdictional issues during this phase of the action. *See* Rule 56.01.

Several of the plaintiffs' discovery requests were overly broad as to time frame, sought information that is protected from discovery by federal law, or pertained to the merits of their negligence actions as opposed to the discoverable issue of personal jurisdiction over Gun Shop. While the plaintiffs' point is well taken that some of the discovery they sought would have been warranted had they been required to prove that Gun Shop's actions were intentionally directed at Missouri, our finding above that this element of proof is not required obviates the need for discovery of these issues at this time. Therefore, we do not find that the trial court abused its discretion with respect to plaintiffs' discovery requests. Point two of the appeal is denied.

### Conclusion

For the above reasons, we reverse the judgment of the trial court dismissing the plaintiffs' actions and remand to the trial court for further proceedings consistent with this opinion.[13]

JAMES EDWARD WELSH, Judge, and MARK D. PFEIFFER, Judge, concur.

---

13. Because of the unique timing issues in these cases, and the possibility that the Kansas appellate court, where the Nilges matter is fully briefed and awaiting oral argument, could overturn the Kansas trial-court decision, judicial economy might warrant that the Missouri trial court stay any further proceedings pending the Kansas appellate decision.