William GETZ, Appellant,

v.

TM SALINAS, INC., Respondent.

No. WD 76251.

Missouri Court of Appeals, Western District.

Oct. 15, 2013.

Eddie G. Dougherty, Kansas City, MO, for appellant.

Stephen J. Fields, Clayton, MO, for respondent.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK and GARY D. WITT, Judges.

LISA WHITE HARDWICK, Judge.

William Getz appeals the circuit court's judgment dismissing, without prejudice, his petition for damages against TM Salinas, Inc. ("Salinas"). The court dismissed his petition on the basis that the allegations in the petition were conclusory and did not set forth sufficient minimum contacts between Salinas and Missouri to warrant the exercise of personal jurisdiction over Salinas. On appeal, Getz contends his petition alleges facts showing that Salinas purposefully availed itself of the privilege to engage in business in Missouri such that it could reasonably anticipate being haled into a Missouri court. For reasons explained herein, we affirm.

### Factual and Procedural History

Salinas is a corporation that is organized and existing under the laws of Kansas, with its principal place of business in Roeland Park, Kansas. Salinas owns, operates, maintains, and controls a McDonald's restaurant on Roe Avenue in Roeland Park and is engaged in the sale of food products for consumption and use by members of the general public.

On July 29, 2010, Getz, a resident of Roeland Park, was a business invitee of Salinas and was on the premises of the Roeland Park McDonald's for the purpose of buying a boneless chicken sandwich. After buying the sandwich, Getz drove to Jackson County, Missouri, where he consumed the sandwich. The sandwich allegedly contained a bone. According to Getz, as a direct result of consuming the sandwich with the bone in it, he "endured great injury including, but not limited to, physical pain, severe emotional distress, mental suffering, and has incurred expenses related to treatment of the same."

In May 2012, Getz filed a petition in the circuit court of Jackson County, Missouri, seeking damages against Salinas for these injuries under theories of negligence, res ipsa loquitur, breach of warranty, and strict products liability. Salinas moved to dismiss the petition with prejudice for lack of personal jurisdiction. Salinas argued that it was not subject to Missouri's long-arm statute, Section 506.500, RSMo 2000, and that it lacked sufficient minimum contacts with Missouri for the court to assert personal jurisdiction.

In ruling on Salinas's motion to dismiss Getz's original petition, the court found that Missouri's long-arm statute extended to Salinas because it was reasonable for Salinas "to have foreseen that a negligent sale at its restaurant could have effects in Missouri." On the issue of whether Salinas had sufficient minimum contacts with Missouri, however, the court found that the only allegation in Getz's petition relating Salinas to Missouri was Getz's action in transporting the sandwich across the state line from Kansas to Missouri. The court determined that action was "quite attenuated and require[d] [Getz]'s own actions and intervention." Additionally, the court noted that both parties were Kansas residents and that Missouri did "not have any

specific interest in providing a forum for the litigation of this cause of action." Moreover, the court noted that, while Jackson County, Missouri, might "serve as a convenient forum for the parties to litigate this matter, a similarly convenient forum can be found in Johnson County, Kansas." Therefore, the court dismissed the matter without prejudice.

After his original petition was dismissed, Getz filed a second suit for damages against Salinas in Jackson County, Missouri. Getz's petition in the second suit was substantially similar to his original petition, as it alleged the same injuries and asserted counts of negligence, res ipsa loquitur, breach of warranty, and strict products liability. This second petition, however, made additional allegations regarding jurisdiction, including that Getz was first injured in Jackson County, Missouri; that the court had personal jurisdiction over Salinas under Missouri's long-arm statute; and that Salinas had sufficient minimum contacts with Missouri such that defending a suit in Missouri did not offend traditional notions of fair play and substantial justice.

To support his contention that Salinas had sufficient minimum contacts with Missouri, Getz further alleged that: (1) the very transitory and expeditious nature of Salinas's restaurant, a fast-food eatery, virtually guarantees that many patrons will use the "drive-thru" process and then drive the approximately two miles into Missouri; (2) Salinas engages in print, radio, and television advertising within Missouri in an attempt to entice Missouri residents to patronize its McDonald's and, as a result of this advertising and the restaurant's proximity to Missouri, Missouri residents are frequently and regularly patrons of the restaurant; (3) Salinas employs Missouri residents to staff its McDonald's and solicits Missouri residents for employment through an online application process that is readily accessible to Missouri residents; (4) Given the proximity of Salinas's McDonald's to the Missouri state line, coupled with the contiguous nature of the geographic area in which the McDonald's is located, Salinas knew or should have known that people consumed its food products in Missouri; (5) Missouri is a convenient forum because Salinas's McDonald's is two miles from the Missouri state line and is closer in proximity to the Jackson County Circuit Court than the proposed Kansas court.

In response to Getz's petition in the second suit, Salinas filed a motion to dismiss with prejudice. In its motion, Salinas argued that Getz was precluded from refiling the lawsuit because, even though the dismissal of Getz's original petition was without prejudice, it had the practical effect of terminating Getz's claim in the form in which it was cast. Therefore, Salinas contended that Getz's only option was to appeal. Alternatively, Salinas argued that, like Getz's original petition, Getz's second petition lacked allegations sufficient to support a finding of personal jurisdiction.

Getz filed a response in opposition to Salinas's motion to dismiss. The response included an affidavit, in which Getz stated:

1. During the time that I have lived in the greater Kansas City area, and being a member of this community, I have understood that it is a widespread and universal practice for local businesses on both sides of the border to solicit business on both sides of the border and to do business on both sides of the border whenever possible.

2. I have frequented both Jackson County[,] Missouri and Johnson County, Kansas.

3. In my dealings with [Salinas], I have understood [Salinas] to hold out its

business to both sides of the Missouri/Kansas border.

4. The Courthouse in Jackson County, Missouri (415 East 12th Street, Kansas City, Missouri) is closer to [Salinas]'s location cited in the PETITION FOR DAMAGES than the Johnson County, Kansas Courthouse located at 100 N. Kansas Ave. Olathe, Kansas.

After Getz filed his response and this affidavit, Salinas filed a reply to which it attached an affidavit of Theresa Salinas, President of Salinas. In the affidavit, Salinas averred that: (1) Salinas is not registered to do business in Missouri; (2) Salinas does not own, operate, manage, or control any business or property in Missouri; (3) Salinas has never paid for direct advertising in Missouri; (4) Salinas has never advertised or solicited applications for an open employment position specifically in Missouri; (5) Salinas does not engage in purposeful solicitations of Missouri residents for employment, as its open application process is available to anyone.

The court ruled on Salinas's motion to dismiss with prejudice. In its judgment, the court first determined that Getz's failure to appeal the prior dismissal did not preclude his filing the second suit. The court explained that the prior dismissal was based on insufficient allegations of minimum contacts in the petition; thus, the effect of the order was to dismiss the petition and not the action. On the issue of personal jurisdiction, the court concluded that Missouri's long-arm statute extended to Salinas because it was reasonable for Salinas to have foreseen that a negligent sale at its restaurant could have effects in Missouri. The court found, however, that the additional allegations in Getz's second petition were conclusory and did not set forth sufficient minimum contacts with Missouri to warrant exercising personal jurisdiction over Salinas. The

court dismissed Getz's petition without prejudice. Getz appeals.

## APPEALABILITY OF DISMISSALS WITHOUT PREJUDICE

Before addressing Getz's point on appeal, we must first address the issue of the appealability of each of the two dismissals without prejudice. Salinas raises the issue of the appealability of the dismissal without prejudice of Getz's first petition as a basis for affirming the court's dismissal of the second petition. The appealability of the dismissal without prejudice of Getz's second petition is an issue we, as a reviewing court, must examine to determine our jurisdiction sua sponte. *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997).

A dismissal without prejudice is generally not a final, appealable judgment. *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 530 (Mo.App.2011). There are exceptions to this rule, however. "When a dismissal without prejudice operates to preclude a party from bringing another action for the same cause and becomes *res judicata* of what the judgment actually decided, then an appeal may be taken." *Id.* at 531. "An appeal from such a dismissal can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum." *Chromalloy*, 955 S.W.2d at 3. If the effect of the order is to dismiss the plaintiff's action and not merely the petition, then the judgment is final and appealable. *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. banc 1991). A dismissal without prejudice for failure to state a claim, when the plaintiff elects to stand on the dismissed petition and not to plead further, "amounts to a determination that the plaintiff has no action." *Id.* In that case, the judgment of dismissal, although with-

out prejudice, constitutes an adjudication on the merits and is appealable. *Id.*

■ Applying these principles, the dismissal without prejudice of Getz's first petition for failure to allege sufficient facts warranting the exercise of personal jurisdiction was not a final judgment. Getz did not elect to stand on that petition but, instead, asked the court to reconsider its dismissal and grant him leave to file an amended petition. The effect of the dismissal without prejudice of Getz's first petition was to dismiss the pleading, not the action. Getz could cure the dismissal by filing another suit in the same court, alleging additional jurisdictional facts that he did not assert in his first petition, which he did. The dismissal of Getz's first petition was not a final, appealable judgment. See *Pendergrass v. City of Springfield*, 394 S.W.3d 444, 445 (Mo.App.2013).

■ The same cannot be said of Getz's second petition, which the court also dismissed without prejudice. After his second petition was dismissed, Getz elected to stand on that petition and not to plead further jurisdictional facts. The dismissal without prejudice of Getz's second petition effectively bars him from refiling the action in its original form; therefore, it is appealable. See *Jennings*, 355 S.W.3d at 531.[1]

### STANDARD OF REVIEW

■ Whether or not there is sufficient evidence to make a prima facie showing that the circuit court may exercise personal jurisdiction is a question of law that we review de novo. *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010). When the defendant con-

tests personal jurisdiction, the plaintiff has the burden of establishing that the defendant's contacts with the forum state were sufficient. *Id.*

■ In our review, we consider "the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri sufficient to satisfy due process." *Id.* We may also consider affidavits that have been properly filed in connection with the motion to dismiss. *Id.* (citing *Chromalloy*, 955 S.W.2d at 3 n. 3). The circuit court had the sole discretion to believe or disbelieve any statements made within the affidavits. *Chromalloy*, 955 S.W.2d at 4. We must affirm the court's ruling regarding jurisdiction if the affidavits submitted by the defendant in support of its motion to dismiss show that it did not commit any act sufficient to invoke personal jurisdiction. *Id.*

### ANALYSIS

■ In his point on appeal, Getz contends the court erred in dismissing his petition because he adequately alleges facts to support the exercise of personal jurisdiction over Salinas. To evaluate personal jurisdiction, we employ a two-step analysis. *Bryant*, 310 S.W.3d at 231. In the first step, we determine whether the defendant's conduct satisfies Missouri's long-arm statute, Section 506.500, RSMo 2000. *Id.* If it does, then we next determine "whether the defendant has sufficient minimum contacts with Missouri such that asserting personal jurisdiction over the de-

---

1. We recognize that this principle applies to dismissals without prejudice for failure to state a claim where the plaintiff chooses not to plead further. See *Jennings*, 355 S.W.3d at 531. However, we find this situation, where the petition was dismissed without prejudice for failure to allege sufficient facts establishing jurisdiction and the plaintiff chooses not to plead further, to be analogous.

fendant comports with due process." *Id.* Here, the circuit court found that the long-arm statute extends to Salinas, and Salinas does not challenge this finding. The sole issue in this appeal, therefore, is whether Getz's second petition sets forth sufficient minimum contacts between Salinas and Missouri to allow the court to exercise personal jurisdiction over Salinas.

Due process prohibits courts "from exercising personal jurisdiction over a defendant where to do so offends 'traditional notions of fair play and substantial justice.'" *Id.* at 232 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Without "one of the traditional territorial bases of personal jurisdiction—presence, domicile or consent—a court may assert personal jurisdiction over a defendant only if certain minimum contacts between Missouri and the defendant are established." *Id.* (footnote omitted).

"When evaluating minimum contacts, the focus is on whether 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "It is essential that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* at 236 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

To assist us in determining whether Salinas has purposely availed itself of the privilege of doing business in Missouri such that it could reasonably anticipate being haled into court here, we may, but are not required to, consider five factors: (1) the nature and quality of Salinas's contacts with Missouri; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience of the forum to the parties. *Id.* at 233 n. 4.

Looking at the contacts Getz alleges in his petition, we note that several of them are directly refuted by Theresa Salinas's affidavit. For example, in response to Getz's allegation that Salinas engaged in print, radio, and television advertising within Missouri in an attempt to entice Missouri residents to patronize its McDonald's, Ms. Salinas avers that Salinas has never paid for direct advertising in Missouri.

That Salinas has not bought direct advertising in Missouri distinguishes this case from *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 913 (8th Cir.2012), the case upon which Getz primarily relies, and *Noble v. Shawnee Gun Shop, Inc.,* 316 S.W.3d 364, 373–74 (Mo.App.2010). In *Myers,* the defendant, an Illinois casino, advertised through print, radio, and television media in Missouri and engaged in direct mailing campaigns targeted at Missouri addresses. *Myers,* 689 F.3d at 908. The Illinois casino also advertised at Busch Stadium, paid for a "party porch" at the stadium, and operated a fleet of shuttle buses that ferried customers to and from the stadium. *Id.* Likewise, the defendant in *Noble* was a Kansas gun shop that advertised to Missouri residents through a Kansas City area-wide newspaper and on Kansas City area radio stations. *Noble,* 316 S.W.3d at 373. The Kansas gun shop also marketed itself as the "Midwest's Largest Shooting Range," "Kansas City's Largest Indoor Shooting Range," and it advertised that it had "Kansas City's Largest Selection of Handguns." *Id.* The courts in *Myers* and *Noble* found that the defendants' purposely

directing activities at Missouri and actively soliciting and targeting Missouri residents constituted significant contacts supporting the exercise of personal jurisdiction over the non-resident defendants. *Myers,* 689 F.3d at 913; *Noble,* 316 S.W.3d at 373–74.

In this case, although Getz makes much of the fact that the McDonald's corporation "floods consumers with a flurry of print advertisements, television commercials, and web advertisements," there is no indication that this marketing campaign directs Missouri consumers to Salinas's franchise in particular, as opposed to any other McDonald's franchise in the Kansas City area, in Missouri, in Kansas, across the United States, or around the world. Unlike the defendants in *Myers* and *Noble,* Salinas did not solicit or target Missouri residents to patronize its out-of-state business.

Another alleged contact that Ms. Salinas's affidavit refutes is Getz's contention that Salinas solicits Missouri residents for employment in its restaurant. In his petition, Getz states that Salinas solicits Missouri residents for employment through an online application process that is readily accessible to Missouri residents. In her affidavit, however, Ms. Salinas avers that Salinas has never advertised or solicited applications for an open employment position specifically in Missouri but, instead, uses an open application process that is available to anyone. Merely because Missouri residents—like anyone around the world who is connected to the Internet—can and have accessed Salinas's online employment application to seek employment at Salinas's McDonald's does not indicate that Salinas has purposefully availed itself of the privilege of conducting business in Missouri.

The other contacts that Getz alleges in his petition are premised upon the nature of Salinas's business as a fast-food restaurant and its location near the Kansas–Missouri border. Specifically, Getz alleges that the "very transitory and expeditious nature" of Salinas's McDonald's "virtually guarantees" that many patrons will use its drive-thru window and then drive into Missouri. Getz also alleges that, because of the close proximity of the McDonald's to Missouri and the contiguous nature of the geographic area in which the McDonald's is located, Salinas knew or should have known that people consumed its food products in Missouri.

The United States Supreme Court deemed insufficient allegations that were similar to these in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 296–97, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In that case, the plaintiffs, New York residents, bought a car from a New York retailer. *Id.* at 288, 100 S.Ct. 559. A year later, the plaintiffs left New York to move to relocate in Arizona. *Id.* As they passed through Oklahoma, their car was rear-ended, resulting in a fire that injured one of the plaintiffs and her two children. *Id.* Plaintiffs subsequently brought a products-liability action in Oklahoma against the automobile wholesaler and retailer, who contested Oklahoma's exercise of personal jurisdiction over them. *Id.* Neither the wholesaler nor the retailer did any business in Oklahoma, shipped or sold any products to or in that state, had an agent to receive process there, or purchased advertising in any media calculated to reach Oklahoma. *Id.* at 289, 100 S.Ct. 559. After the Oklahoma Supreme Court found that Oklahoma had jurisdiction, the United States Supreme Court granted certiorari and reversed, finding that the defendants had no " 'contacts, ties, or relations' " with Oklahoma. *Id.* at 299, 100 S.Ct. 559.

In reversing, the Court rejected the plaintiffs' argument that, "because an automobile is mobile by its very design and

purpose," it was foreseeable that the plaintiffs' car would cause injury in Oklahoma. *Id.* at 295, 100 S.Ct. 559. The Court stated that " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* If foreseeability alone were the criterion, then "[e]very seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel." *Id.* at 296, 100 S.Ct. 559

The Court explained that the type of "foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State." *Id.* at 297, 100 S.Ct. 559. "Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* This is because, if the defendant " 'purposefully avails itself of the privilege of conducting activities within the forum State,' " then "it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation" by obtaining insurance, passing expected costs on to its customers, or severing its connection with the forum state. *Id.* (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228). The Court found that, while it may have been foreseeable that purchasers of the defendants' automobiles may take them to Oklahoma, "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' " *Id.* at 298, 100 S.Ct. 559 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228).

Getz's contention that Salinas knew or should have known that customers would consume its products in Missouri because it is a fast-food restaurant, with a drive-thru window, that is close to the Kansas–Missouri border is no different from the foreseeability argument the Supreme Court rejected in *World–Wide, i.e.,* that it was foreseeable that the plaintiffs' car could cause injury in Oklahoma because an automobile is mobile by its design and purpose. Like the plaintiffs in *World–Wide,* Getz's assertion that Missouri has personal jurisdiction is based, in large part, on his unilateral act of transporting the allegedly defective sandwich across the state line from Kansas to Missouri before consuming it and allegedly being injured. The mere likelihood, however, that a food product from the Salinas's McDonald's will find its way into Missouri is not determinative of whether Salinas has sufficient minimum contacts to support jurisdiction.[2]

The nature, quality, and quantity of Getz's alleged contacts between Salinas and Missouri are nominal and coincidental at best. These alleged contacts are based solely on the type of restaurant Salinas happens to own, the restaurant's close proximity to both the Kansas–Missouri border and the Jackson County Circuit Court, and Getz's unilateral act of driving to Missouri before consuming the sandwich. "Random, fortuitous, or attenuated contacts are not sufficient." *Peoples Bank v. Frazee,* 318 S.W.3d 121, 129 (Mo. banc 2010).

Salinas is a Kansas corporation that is not registered in Missouri, does not own, operate, manage, or control any business

---

**2.** Indeed, that Salinas earns "a tremendous portion of its daily revenue" from patrons from Missouri or going into Missouri, a claim that Getz makes only in his appellate brief, would not, by itself, support Missouri's exercising personal jurisdiction over Salinas.

"[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *World–Wide,* 444 U.S. at 299, 100 S.Ct. 559.

or property in Missouri, does not conduct business within Missouri, has never paid for direct advertising in Missouri, and has never advertised or solicited applications for an open employment position specifically in Missouri. As alleged in Getz's petition, all of Salinas's purported acts of negligence and omissions occurred in Kansas, and Getz is a Kansas resident. Missouri has little, if any, interest in providing a forum for this lawsuit.

Getz has failed to allege any conduct by Salinas or any connection between Salinas and Missouri demonstrating that Salinas has purposefully availed itself of the privilege of conducting activities within Missouri such that it should reasonably anticipate being haled into court here. Accordingly, his petition fails to demonstrate sufficient minimum contacts to warrant Missouri's exercising personal jurisdiction over Salinas. We deny the point on appeal.

### CONCLUSION

The circuit court's judgment is affirmed.

ALL CONCUR.