# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1027

_____

Mark Myers

*Plaintiff - Appellant*

v.

Casino Queen, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 13, 2012
Filed: August 21, 2012

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Mark Myers sued Casino Queen, Inc. in Missouri state court based on theories of negligence and premises liability. The action was removed to the United States District Court for the Eastern District of Missouri. Following removal, Casino Queen filed a motion to dismiss for lack of personal jurisdiction, arguing Missouri's long-arm statute did not authorize jurisdiction and the exercise of jurisdiction over Casino

Queen by a Missouri court would not comport with due process requirements. The district court granted the motion. We reverse.

## I

Casino Queen operates a gambling and hotel establishment in East St. Louis, Illinois. Casino Queen's location places it within a larger metropolitan area that is comprised of East St. Louis, Illinois, St. Louis, Missouri, and several smaller suburbs in both Missouri and Illinois. As such, Casino Queen actively pursues marketing campaigns directed at Missouri residents for the purpose of attracting customers to patronize the casino and hotel.

Casino Queen's advertising and promotional campaigns are numerous and extensive. Not only does Casino Queen advertise through print, radio, and television media in Missouri, but it also engages in direct mailing campaigns targeted at Missouri addresses. Casino Queen maintains business relationships with professional sports teams in Missouri. Specifically, Casino Queen advertises at Busch Stadium, home of the St. Louis Cardinals, and pays for a special area located inside the stadium known as the "Casino Queen Party Porch." To facilitate movement of customers between Missouri and Illinois, Casino Queen operates a fleet of shuttle buses that ferry customers to and from Busch Stadium. In addition to licensing agreements and transportation, Casino Queen donates to political efforts in Missouri. In 2008, Casino Queen donated $150,000 to a group that opposed the repeal of gambling loss limit laws in Missouri.

Myers is a resident of St. Louis County, Missouri. Prior to the events that gave rise to this dispute, Myers had come into repeated contact with Casino Queen. Myers had seen and heard Casino Queen radio, television, and print media advertisements in Missouri and visited the "Casino Queen Party Porch" while attending a sports event at Busch Stadium. Myers had also visited Casino Queen.

On April 12, 2009, Myers went to Casino Queen to gamble. Myers sat at a blackjack table for several hours where he was served several alcoholic drinks. Myers won approximately $17,500. Myers proceeded to cash out his winnings at a cashier station in public view. After collecting the cash and filling out a tax form, a visibly intoxicated Myers left the casino. Myers alleges that two individuals saw him cash out his winnings and followed him out of the casino. After leaving the casino, Myers hailed a cab and returned to Missouri. The two individuals who followed Myers out of the casino also followed Myers's cab. When Myers arrived back home in Missouri, the two individuals beat and robbed Myers.

Casino Queen observes precautionary procedures for patrons who win substantial amounts at the casino. These procedures include offering the customer a private room in which to have winnings counted, providing security escorts for the customer while inside the casino, and allowing for a security vehicle to follow the customer's vehicle after exiting the casino to ensure the customer's vehicle is not harassed or followed after leaving the premises. Casino Queen was aware that Myers had won a substantial amount of money, as it alleges it offered him the option of having his funds wired to a bank account of his choice. Myers asserts Casino Queen did not extend any of these other precautions to him on April 12. Prior to Myers's injuries, Casino Queen was aware of three incidents involving "follow home" robberies. During these robberies, casino patrons were targeted at Casino Queen, followed out of the casino, and robbed. In Myers's case, Casino Queen was able to produce video surveillance footage from the casino floor that showed Myers being followed by two individuals.

Myers filed suit against Casino Queen in Missouri state court. Casino Queen removed the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1332(a)(1). Casino Queen filed a motion to dismiss for lack of personal jurisdiction. The district court granted the motion and Myers now appeals.

II

A district court's decision to dismiss a case for lack of personal jurisdiction is reviewed de novo. Johnson v. Arden, 614 F.3d 785, 793 (8th Cir. 2010). "Although a plaintiff seeking to predicate long-arm jurisdiction on the accrual of a tort action within the forum state need not make a full showing on the merits that the nonresident defendant committed the tort, a prima facie showing is required to defeat a motion to dismiss for want of jurisdiction." Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974).

Casino Queen contends the district court could not exercise jurisdiction unless Casino Queen's actions satisfy one of the enumerated sections of Missouri's long-arm statute, and the exercise of jurisdiction comports with due process requirements. Some of our cases have held where a state supreme court interprets its long-arm statute to permit jurisdiction over nonresidents to the full extent permissible under the Due Process Clause, this dual inquiry collapses into a single inquiry of whether asserting jurisdiction violates the Due Process Clause. See, e.g., Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000) (conducting only a due process analysis after noting "Missouri courts have interpreted the [long-arm] statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction"). In contrast, other cases have held the jurisdictional analysis requires us to consider these inquiries separately. See, e.g., Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593-98 (8th Cir. 2011) (conducting both a long-arm statute and due process analysis).

To address this conflict, we note the reach of a state's long-arm statute is a matter of state law, and "federal courts are required to accept the interpretation given the statute by the state supreme court[.]" Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982); see also Viasystems, 646 F.3d at 593 n.2 (noting we are bound by the decisions of the Missouri Supreme Court when conducting a

jurisdictional analysis in a diversity case). Thus, in deciding if the analysis of a state's long-arm statute can be satisfied solely by a due process analysis, we look to the Missouri Supreme Court. In its most recent decision involving a question of personal jurisdiction, the Missouri Supreme Court held it was necessary to conduct two separate inquiries: one inquiry to establish if a defendant's conduct was covered by the long-arm statute, and a second inquiry to analyze whether the exercise of jurisdiction comports with due process requirements. See Bryant v. Smith Interior Design Grp., Inc., 310 S.W.3d 227, 231 (Mo. 2010).

"When the highest court of a state disposes of an issue of state law contrary to the resolution of the issue theretofore suggested by a federal court, the latter ruling must give way." Beckon, Inc. v. AMCO Ins. Co., 616 F.3d 812, 820 (8th Cir. 2010) (quoting Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 429 n.12 (1st Cir.1996)). Accordingly, we adopt the ruling in Bryant as controlling and find it necessary to consider both whether Casino Queen's actions fall within the purview of Missouri's long-arm statute and whether the exercise of jurisdiction over Casino Queen by a Missouri court comports with due process requirements.

A. Missouri Long-Arm Statute

The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute. The statute provides:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
> . . .
>
> (3) The commission of a tortious act within this state[.]

. . .

Mo. Rev. Stat. § 506.500. Missouri courts have interpreted subsection (3) to include "extraterritorial acts of negligence producing actionable consequences in Missouri." State ex rel. William Ranni Assocs., Inc. v. Hartenbach, 742 S.W.2d 134, 139 (Mo. 1987). Missouri courts are split on whether an extraterritorial tort must be "deliberately designed" to enter into Missouri. Compare Nelson v. R. Greenspan & Co., Inc., 613 F. Supp. 342, 345 (E.D. Mo. 1985) (finding long-arm statute was satisfied when "[defendant] sets in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business"), with Noble v. Shawnee Gun Shop, Inc., 316 S.W.3d 364, 372 (Mo. Ct. App. 2010) (applying a foreseeability standard to extraterritorial torts, not a "deliberate design" standard). The Missouri Supreme Court does not apply the "deliberate design" requirement. See Bryant, 310 S.W.3d at 231-32 (finding personal jurisdiction existed in negligent misrepresentation case without applying "deliberately designed" standard).

Casino Queen contends that when a tortious act occurs in another state with actionable consequences in Missouri, that act must be deliberately designed to enter Missouri for it to fall within the scope of Missouri's long-arm statute. Casino Queen relies on the holding in Hollinger v. Sifers, 122 S.W.3d 112 (Mo. Ct. App. 2003), to support this position. In Hollinger, a Missouri patient sued her Kansas doctor in Missouri state court for medical malpractice and negligent misrepresentation. The court dismissed the action for lack of personal jurisdiction. The Missouri Court of Appeals affirmed, reasoning that the single act of appearing in a televised interview (the defendant's only contact with Missouri) was "too attenuated" to satisfy the Missouri long-arm statute. Hollinger, 122 S.W.3d at 117.

Conversely, Myers argues the decision in Noble controls. Noble involved a Missouri resident's negligence action against a Kansas gun store. The plaintiff alleged the gun store was negligent in the sale of firearm accessories used in a shooting in

-6-

Missouri. An action was brought in Missouri and was dismissed for lack of personal jurisdiction. The gun store argued its activities were not directed at Missouri, thus making the exercise of personal jurisdiction by Missouri inappropriate. The Missouri Court of Appeals reversed, finding it was neither necessary nor prudent to apply the standard of deliberate design to negligence actions. Noble, 316 S.W.3d at 372. The Noble court analogized to dram shop cases in other states and noted:

> [T]he courts in these dram shop cases and others found that the fact that these businesses were located near the border and, in some cases, advertised to residents on both sides of the border, meant that the businesses knew or should have known (although the courts did not analyze their decisions using this wording) that their customers were likely to cross the border after patronizing the businesses. Therefore, it would be foreseeable that a sale originating from their businesses could have consequences in the neighboring state. We find that this standard is appropriate for determining whether the alleged cross-border-negligence of a defendant falls under Missouri's long-arm statute.

Id.

Our review of Noble and Hollinger, as well as the Missouri Supreme Court's refusal to apply the "deliberate design" standard, lead us to believe *foreseeability* is the standard to be applied when evaluating whether jurisdiction is appropriate over a tortious act occurring in another state with actionable consequences in Missouri. If a defendant can reasonably foresee his or her negligent actions having consequences felt in Missouri, jurisdiction is authorized. We also acknowledge that the showing required of a plaintiff in a provision of service case may be greater than a case involving a product. See Hollinger, 122 S.W.3d at 117 ("Where a non-resident defendant is engaged in providing a service, as opposed to providing a product through the stream of commerce, the contact requirements for long-arm jurisdiction are more stringent.").

In the instant case, the plaintiff has shown a compelling basis for jurisdiction that meets the more stringent requirements. Casino Queen's actions prior to Myers's injuries indicate it could foresee, and took steps to prevent against, the kind of injuries that Myers suffered. Casino Queen had a policy of protecting customers who had won substantial sums of money, even going as far as to provide an escort vehicle on the highway. Given Casino Queen's pervasive advertising directed at Missouri residents, Casino Queen knew that customers from Missouri patronized its casino and could have foreseen those customers would return to Missouri. Because it was foreseeable that Casino Queen's actions could have consequences felt in Missouri, jurisdiction is authorized under Missouri's long-arm statute.

B. Due Process

Due process requires that a defendant have certain "minimum contacts" with the forum state for personal jurisdiction to be exercised. Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). Contacts with the forum state must be sufficient that requiring a party to defend an action would not "offend traditional notions of fair play and substantial justice." Id. at 316 (internal quotation marks and citation omitted). "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 112 (1987) (internal citations omitted).

We developed a five-factor test to evaluate whether a defendant's actions are sufficient to support personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. See, e.g., Precision Const. Co. v. J.A. Slattery Co., Inc., 765 F.2d 114, 118 (8th Cir. 1985) (noting that the first three factors are of primary importance and the last two of secondary

importance). The third factor distinguishes between specific and general jurisdiction. Johnson, 614 F.3d at 794. Myers only contends the district court can exercise specific jurisdiction over Casino Queen in this action, so we have no need to consider whether Missouri courts have general jurisdiction over Casino Queen.

Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The exercise of specific jurisdiction is permissible if a defendant purposefully directs its activities at residents of the forum state, "and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citing Helicopteros, 466 U.S. at 414). "Unfortunately, the Supreme Court has not yet explained the scope of [the arise out of or relate to] requirement." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 318 (3d Cir. 2007). While we have applied the requirement, see, e.g., Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006); Romak USA, Inc. v. Rich, 384 F.3d 979, 984-85 (8th Cir. 2004), we have yet to elaborate on its scope.

The various circuits interpret the "arise out of or relate to" requirement differently, and three dominate approaches have emerged. See O'Connor , 496 F.3d at 318 (discussing the three approaches that have emerged among the federal courts); Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 713-715 (1st Cir. 1996) (same); see also Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 597-586 (Tex. 2007) (same); Charles W. "Rocky" Rhodes, The Predictability Principle in Personal Jurisdiction Doctrine: A Case Study On The Effects of a "Generally" Too Broad But "Specifically" Too Narrow Approach to Minimum Contacts, 57 Baylor L. Rev. 135, 201-07 (2005) (same).

The first interpretation is referred to as the proximate cause standard. See O'Connor, 496 F.3d at 318. This standard requires the defendant's contacts with the

forum state to be the "legal cause," (i.e., proximate cause) of the plaintiff's injuries. Id. The second interpretation is more relaxed and "requires only 'but for' causation. As the name indicates, this standard is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." Id. at 319. The third standard, referred to as the "substantial connection" standard, examines "whether the tie between the defendant's contacts and the plaintiff's claim is close enough to make jurisdiction fair and reasonable." Id.

At least one circuit has regarded us as applying the "proximate cause" standard. See Nowak, 94 F.3d at 715 (citing Pearrow v. Nat'l Life & Acc. Ins. Co., 703 F.2d 1067, 1068 (8th Cir. 1983)). Any reading of Pearrow as adopting a proximate cause standard is misguided. Pearrow only conducted a statutory analysis of Arkansas's long-arm statute. See Pearrow, 703 F.2d at 1069 (interpreting Ark. Stat. Ann § 27-2502 and stating "the Arkansas long arm statute imposes a further condition: the cause of action against the foreign corporation must have arisen out of the corporation's transaction of business within the state."). Indeed, Pearrow predated the Supreme Court's decisions in Helicopteros and Burger King and could not possibly involve an application of the "arise out of or relate to" requirement of a constitutional due process analysis articulated in those cases.

Although our cases have not clearly stated our position, we have not restricted the relationship between a defendant's contacts and the cause of action to a proximate cause standard. Rather, we have said specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation "result[s] from injuries . . . relating to [the defendant's] activities [in the forum state.]" Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008). We have also emphasized the need to consider "the totality of the circumstances in deciding whether personal jurisdiction exists[,]" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592-93 (8th Cir. 2011) (citing Johnson, 614 F.3d at 794). This stance is consistent with other circuits which have focused on the need to adopt a flexible approach when construing

the "relate to" aspect of the Supreme Court's standard. See Nowak, 94 F.3d at 716 ("By this approach, we intend to emphasize the importance of proximate causation, but to allow a slight loosening of that standard when circumstances dictate. We think such flexibility is necessary in the jurisdictional inquiry: relatedness cannot merely be reduced to one tort concept for all circumstances.").

Under the circumstances present in this case, we believe the exercise of specific jurisdiction over Casino Queen is consistent with traditional notions of fair play and substantial justice. Casino Queen purposely directed its activities at Missouri and actively solicited and targeted Missouri residents like Myers, seeking to have them patronize Casino Queen's facility. Myers avers that he was subject to these solicitations and claims he was injured as a result of visiting the casino. While Myers's injuries did not arise out of Casino Queen's advertising activities in a strict proximate cause sense, his injuries are nonetheless related to Casino Queen's advertising activities because he was injured after responding to the solicitation.

> When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

Id.

Having distinguished between specific and general jurisdiction under the third factor, and determined the exercise of specific jurisdiction does not offend traditional notions of fair play under the facts present in this case, we turn to the remaining four

-11-

factors. The district court concluded the first two factors—the nature, quality, and quantity of Casino Queen's contacts with Missouri—weigh in favor of exercising jurisdiction. We agree. Casino Queen targets Missouri residents specifically with marketing campaigns, including the use of direct mailing to Missouri residents. Additionally, Casino Queen operates a shuttle service to move Missouri residents to and from the casino and occupies a special section of Busch Stadium in St. Louis, Missouri known as the "Casino Queen Party Porch."

Factor four also weighs in favor of exercising jurisdiction because Myers was injured inside Missouri, giving Missouri an interest in providing a forum. See K-V Pharm., 648 F.3d at 595 ("Missouri obviously has an interest in providing a forum for [its] resident[s]."). Finally, factor five weighs in favor of exercising jurisdiction. Casino Queen is located less than two miles from the location where the United States Federal Court for the Eastern District of Missouri sits. Moreover, Casino Queen does not argue on appeal that it would be inconvenient for it to litigate in Missouri. See Cubillos v. Holder, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009) (deeming an argument not developed on appeal to be waived).

We emphasize the difficulty in analyzing jurisdictional due process requirements in that each case is unique, and thus the underlying principles are not prone to mechanical application. Int'l Shoe Co., 326 U.S. at 319. However, when considering the particular facts involved in this case, we do not believe the exercise of jurisdiction over Casino Queen by a Missouri court is unfair. Given the intensive marketing campaign aimed at Missouri residents, Casino Queen could reasonably foresee being haled into a Missouri court for actions related to that marketing, including a cause of action brought by a Missouri resident who responded to the advertising and was injured as a result.

## III

Casino Queen's actions fall within the scope of Missouri's long-arm statute.  In addition, the exercise of personal jurisdiction over Casino Queen by a Missouri court comports with the requirements of due process.  Accordingly, we reverse the district court's order dismissing the case for lack of personal jurisdiction and remand to the district court for further proceedings.

_____