# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 13-2345

———————————————

Don M. Downing; Adam J. Levitt, on behalf of themselves and those similarly situated

*Plaintiffs - Appellants*

v.

Goldman Phipps, PLLC; Goldman, Pennebaker & Phipps, P.C.; Martin Phipps; Keller Stolarczyk, PLLC; Mikal C. Watts, PC; Mikal C. Watts; Stephen B. Murray, Sr.; Murray Law Firm; Charles A. Banks; Banks Law Firm

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: June 11, 2014
Filed: August 22, 2014

————————

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

————————

MURPHY, Circuit Judge.

Plaintiff class representatives Don Downing and Adam Levitt (Downing), lead counsel in a large multidistrict litigation (MDL) against Bayer CropScience LP and other defendants (Bayer), brought this action for unjust enrichment and quantum meruit against other plaintiff lawyers. The class alleges these other lawyers

benefitted in their state court actions from litigation materials and work product generated in the MDL by the plaintiff class but refused to pay for it. Defendants include attorneys and firms Martin J. Phipps, Mikal C. Watts, Charles A. Banks, Goldman Phipps PLLC, Goldman Pennebaker & Phipps P.C., Mikal C. Watts P.C., Banks Law Firm PLLC, Keller Stolarczyk PLLC (the Phipps group), Steven B. Murray and the Murray Law Firm (Murray), all of whom had represented clients in both the federal MDL and the state court actions against Bayer. The district court granted defendants' motion to dismiss for lack of personal jurisdiction, and Downing appeals. We reverse and remand.

I.

Thousands of long grain rice producers located primarily in Arkansas, Louisiana, Mississippi, Missouri, and Texas, as well as certain rice millers and dealers, sued Bayer in federal and state court for damages resulting from a widespread contamination of the United States rice supply. The Judicial Panel on Multidistrict Litigation (JPML) transferred all of the federal actions to the United States District Court for the Eastern District of Missouri for its oversight and administration. The defendants' cases were among those transferred for administration from other districts by the JPML.

A number of attorneys sought to be appointed lead counsel for MDL plaintiffs including Steven Murray. His application stated that he had made a judgment that his clients' interests were best served "by being in the federal system," and that he "embrace[d] the MDL process." At an April 12, 2007 hearing attended by Murray and Martin Phipps, the district court appointed Don Downing and Adam Levitt as co lead counsel and also appointed an executive committee. The court ordered all plaintiffs to act only through this leadership and ordered the leaders to act on behalf of all the federal plaintiffs on all matters, including directing and conducting settlement negotiations. This leadership filed a motion for class certification, which

the Phipps group opposed. Phipps came to Missouri for the May 22, 2008 hearing on this motion to certify a plaintiff class. The district court denied the motion.

Leadership moved to establish a common benefit fund for attorney compensation. The leaders sought to require contribution from all MDL recoveries, as well as from non MDL recoveries whose counsel had access to the MDL work product. A majority of MDL attorneys supported the motion, and some counsel for state court clients agreed to contribute to the fund. The Phipps group and Murray objected to its creation, however, as well as to the court's jurisdiction to require contribution from state court recoveries. The district court concluded it lacked jurisdiction to order contributions from parties not transferred to it, even when counsel in those cases also had federal cases pending in the MDL before the court. The court "reach[ed] this conclusion reluctantly, because it [wa]s abundantly clear that the plaintiffs in the related state-court cases have derived substantial benefit from the work of the leadership counsel in these federal cases." Nevertheless, a common benefit trust fund (CBTF) was created for contributions to be deposited with the court. As the district court pointed out, "most of the lawyers representing plaintiffs in state cases have agreed to join in the trust" and those "who have not agreed to join in the trust will have been unjustly enriched if they are not required to contribute to the fees of the leadership lawyers." The court "encourage[d] all plaintiffs' counsel having cases in both this federal court and in state courts to agree to participate in the fund." None of the defendants participated.

Common benefit attorneys (CBAs) spent over 107,000 hours and expended about $5.5 million in prosecuting the MDL. Their work included, but was not limited to, drafting a master consolidated complaint asserting 33 claims against Bayer under the laws of six states, successfully opposing Bayer's motion to dismiss, examining and coding about 2.8 million pages of documents, and taking or defending 167 depositions. Murray himself attended depositions taken in Missouri by CBAs, and the defendants requested that those depositions be cross noticed in their state court

cases. CBAs also conducted three MDL bellwether trials which tested liability under the laws of Missouri, Arkansas, Mississippi, and Louisiana. Each of those state law trials was held in the St. Louis federal courthouse and resulted in a plaintiffs' verdict. The Phipps group attorneys also traveled to Missouri to attend them. These bellwether trials were held in St. Louis in November 2009, January 2010, and June 2010.

Downing alleges that the defendants made extensive use in their state court cases of CBA generated materials, which they first acquired in Missouri from Downing. Phipps, Banks, and Keller represented plaintiffs in Kyle v. Bayer A.G., No. CV-2008-107-3 (Mar. 8, 2010), in a February 2010 trial in the Circuit Court of Woodruff County, Arkansas. Downing alleges that the Phipps group used materials at this trial which relied on CBA reasoning and also used MDL depositions, exhibits, and testimony from the bellwether trials. Downing further alleges that 18 of the 22 witnesses in the Kyle trial had either been deposed or testified in the MDL and that Phipps defendants introduced videotaped MDL depositions taken by the CBAs, as well as exhibits the CBAs had spent thousands of hours to acquire from searching some 2.8 million pages of MDL documents produced by Bayer.

In November 2008 the district court appointed retired United States District Judge Stephen N. Limbaugh to serve as special master to assist the rice MDL plaintiffs and Bayer in settlement negotiations. The following month Phipps moved on behalf of defendants' MDL and state court clients to allow them all to attend the settlement meetings. The district court granted the motion over the opposition of common benefit leadership. In the declaration he filed in district court, Downing alleged that Phipps, Watts and Murray attended settlement meetings or meditations in Missouri on the following dates:

> February 9 and 10, 2009,
> April 20 and 21, 2010,

August 19, 20 and 21, 2010,
December 3 and 4, 2010.

At the settlement meeting held in February 2009, the "Phipps legal team" (which included Phipps, Watts, their firms, and Keller Stolarczyk PLLC) made a presentation on individual damage models of rice farmers in Texas and Arkansas. In a subsequent filing in the district court, these defendants represented that they addressed their presentation to "the Bayer Defendants and Riceland because Riceland is also a defendant in the Phipps Legal Team's Arkansas state cases." Banks also attended two settlement conferences in Missouri; in his affidavit he states that his "participation at the two settlement conferences was limited exclusively to the representation of Arkansas residents in the State Court Actions."

Bayer required that the negotiated global settlement resolve 85% of all the claims against it, including the claims in the rice MDL and those claims of defendants' state court clients. A settlement was reached in July 2011, in which Bayer agreed to pay $750 million to settle all producers' claims. The settlement contained two agreements, one governing the rice MDL claims and another known as the GMB settlement. The latter settlement covered claimants outside the MDL represented by Phipps, Watts, Banks and Murray. Keller Stolarczyk PLCC is not named in the GMB settlement, but Downing's complaint alleges that Keller also received compensation from this settlement.

In September 2012 Downing asked the court to approve awards to those CBAs whose work benefitted all plaintiffs. In opposition the Phipps defendants argued that "the funds held back for attorney's fees under [the common benefit fee allocation order] will come from the attorney's share of the recovery, not the client's share." The Phipps group sought a common benefit fee award instead for their work in their state cases. The district court approved a fee award of up to $72 million for certain CBAs but rejected the Phipps group's request for an award. The district court explained that

"the work done by the Phipps Group for its own clients did not benefit the rest of the plaintiffs, while the work performed by the common benefit attorneys definitely benefitted the Phipps Group and its clients. It is not an exaggeration to say that the Phipps Group has been unjustly enriched by the work of the common-benefit attorneys."

On January 31, 2013, Downing filed a class action complaint against the defendants in the Eastern District of Missouri and sought interpleader in the rice MDL. In that action Downing brought state law unjust enrichment and quantum meruit claims against the defendants, alleging that they had access to common benefit services and materials which they used to obtain recoveries in their state law cases, yet they refused to pay into the CBTF. The complaint alleged the defendants had had numerous related contacts in Missouri, including participating there in settlement negotiations, attending the rice MDL trials and hearings, and obtaining materials that the CBAs created in Missouri. It also alleged that work by the CBAs enabled global settlement, which included the GMB settlement of defendants' state cases.

Defendants moved to dismiss for lack of personal jurisdiction. The district court granted the motion after concluding that neither the long arm statute nor due process permitted the exercise of jurisdiction over them in Missouri. The district court observed that there was "no doubt that [the defendants] ha[d] undertaken a variety of actions in the state of Missouri," and it characterized the defendants' contacts with Missouri as "frequent and substantial." It concluded nevertheless that these contacts were not purposeful or voluntary since they directly related to their representation of clients in the rice MDL, noting that they had opposed removal of their cases from state court and their federal cases had been transferred to Missouri with the consolidation of the rice MDL. Even if litigation materials created by plaintiffs in Missouri had been obtained by defendants in Missouri, the court reasoned that the contacts lacked a nexus to Downing's cause of action because any

improper usage of the materials occurred in the states where defendants' trials were held. Downing now appeals.

## II.

We review a dismissal for lack of personal jurisdiction de novo. Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008). To survive a motion to dismiss, a plaintiff need make only a prima facie case that personal jurisdiction exists. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995). When assessing whether personal jurisdiction exists over a nonresident defendant, jurisdiction must be authorized by Missouri's long arm statute and the defendant must have sufficient minimum contacts with the forum state to satisfy due process. Myers v. Casino Queen, Inc., 689 F.3d 904, 909–10 (8th Cir. 2012). As relevant the Missouri long arm statute provides:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
> (1) The transaction of any business within this state;

Mo. Rev. Stat. § 506.500. The Missouri Supreme Court has instructed that "'transaction of any business' must be construed broadly," and if a defendant transacts business within the state the statute provides for jurisdiction to "the full extent permitted by the due process clause." State ex rel. Metal Serv. Ctr. of Ga., Inc., v. Gaertner, 677 S.W.2d 325, 327 (Mo. Banc 1984).

Defendants argue that they did not transact business in Missouri, and that the attorney fees they earned from their state court cases "are insufficient to confer

personal jurisdiction over them in the Missouri court because they did no work in Missouri that generated monies." The record belies this assertion. Each defendant traveled to Missouri to negotiate settlement of their state court cases with Bayer. These negotiations led to the GMB settlement, under which defendants obtained a substantial recovery for their state court clients and fees for themselves personally. Defendants' voluntary actions taken in Missouri led directly to their own financial gain, that gain being the subject matter of Downing's complaint alleging unjust enrichment and quantum meruit.

In a related argument, defendants contend that their presence in Missouri was not voluntary, as it was attributable only to the transfer of the federal rice MDL to Missouri. At oral argument they also asserted that they did not purposely avail themselves of Missouri law by traveling to that state to attend settlement conferences because the location of those conferences was established by the district court's appointment of a Missouri based special master, Judge Limbaugh. The record reveals that this claim is also unfounded. By the time Judge Limbaugh was appointed, the district court had already decided that it lacked jurisdiction over the defendants' state court cases. These counsel were never ordered to attend settlement negotiations respecting their state court cases in Missouri. Rather, the Phipps group took the initiative to move the district court to permit it to attend settlement meetings in Missouri. Each defendant made a purposeful choice to negotiate settlement of their state court cases in Missouri during 2009 and 2010. The fact that the location of the negotiations was not selected by the defendants does not mean that their decision to travel to Missouri was involuntary.

We conclude that the defendant's travel to Missouri to negotiate settlement qualifies as the "transaction of any business" within the state of Missouri. See Mo. Rev. Stat. § 506.500. In Chromalloy Am. Corp. v. Elyria Foundry Co., 955 S.W.2d 1, 4–5 (Mo. Banc 1997), a trip into Missouri to contact a Missouri corporation about making a purchase from it was held to be within the meaning of "transaction of any

business." That Bayer is not a Missouri corporation does not change the fact that the defendants transacted business by entering the state to engage in negotiation with it for their own benefit. We have explained that transacting business has been given an expansive interpretation for when a party "invades a state for pecuniary gain it should be prepared to defend any suit arising out of that invasion." Precision Const. Co. v. J.A. Slattery Co., Inc., 765 F.2d 114, 116 (8th Cir. 1985) (internal quotation marks omitted).

The question remains whether the exercise of jurisdiction over the defendants would offend due process. Due process requires minimum contacts between a defendant and the forum state, and jurisdiction over a defendant with such contacts may not offend "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92 (1980) (internal quotation marks omitted). To be sure, a defendant must have taken actions creating a substantial connection with the forum, and purposefully avail itself of the benefits and protections of the forum to anticipate reasonably being hailed into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–76 (1985). A plaintiff bears the burden of making a prima facie showing that the defendant's contacts were not "random, fortuitous, or attenuated." Steinbuch, 518 F.3d at 586 (internal quotation marks omitted).

Our court uses a five factor test to determine whether a defendant's contacts meet the due process minimum: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." Steinbuch, 518 F.3d at 586. The third factor applies only on the question of whether specific jurisdiction exists, id., and the last two factors "carry less weight and are not dispositive." Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006).

These factors permit the exercise of personal jurisdiction over the defendants. The nature of their contacts with Missouri included their physical presence in Missouri while attempting to settle their state court cases and to secure personal compensation. The record shows that Banks made at least two settlement focused trips into Missouri, and the other defendants made four such trips. Most of these trips spanned multiple days. As the district court noted, the defendants' contacts with the forum were "frequent and substantial." Missouri has a clear interest in providing a forum for Downing, a Missouri resident, and the convenience of the parties factor is neutral.

Defendants argue that their Missouri based actions lack a sufficient nexus to Downing's class claims for unjust enrichment and quantum meruit. They stress that the alleged improper use of litigation materials occurred in other states; for example, in connection with the Kyle trial held in Arkansas. Downing points out, however, that elements of both unjust enrichment and quantum meruit cover the absence of payment of reasonable value, see Webcon Group, Inc. v. S.M. Properties, L.P., 1 S.W.3d 538, 542 (Mo. Ct. App. 1999); Zipper v. Health Midwest, 978 S.W.2d 398, 411 (Mo. Ct. App. 1998). The plaintiffs maintain that the asserted improper conduct was not mere usage of the materials, but also the failure to pay into the Missouri based CBTF to compensate the lawyers that produced the benefit.

When analyzing the elements of a constitutional relationship between the forum, the cause of action, and the defendant which permit the exercise of specific jurisdiction, proximate causation between the contacts and the cause of action is not required. Casino Queen, 689 F.3d at 912. Instead, "specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation result[s] from injuries . . . relating to [the defendant's] activities [in the forum state.]" Id. at 912–13 (internal quotation marks omitted) (alteration in original). In Casino Queen, a winner at an Illinois casino was followed home and robbed; he then sued the casino for negligence. Id. at 907–09. Our court concluded there that the casino's

Missouri based conduct (advertising) was sufficiently related to his cause of action, because even though his injuries were not proximately caused by the advertising, he "was injured after responding to the solicitation." Id. at 913.

We conclude that the defendant's Missouri contacts, which include their negotiation of a settlement of their state court cases and their failure to pay into the CBTF established by the district court, are sufficiently related to Downing's claims to support personal jurisdiction in this case. Downing's complaint alleged that the work for which CBAs seek compensation led to and made possible the settlement, including the GMB settlement which defendants negotiated in Missouri. As previously discussed, the defendants voluntarily went to Missouri to negotiate settlement, thereby earning them the fees that are the subject matter of the current dispute. The failure to pay reasonable value for this benefit took place in Missouri as well; the district court cautioned the defendants that they would be unjustly enriched if they chose not to contribute into the CBTF. We are satisfied that this litigation resulted from injuries related to the defendants' actions in Missouri. See Casino Queen, 689 F.3d at 913.

Having concluded that each defendant's entry into Missouri to negotiate settlement on multiple occasions provide sufficient minimum contacts with the state of Missouri, we need not reach the argument made by defendants that all of their other Missouri based contacts—including entering the state to appear at hearings and make filings, observe depositions and the bellwether trials, and obtain litigation materials—were not constitutionally significant because defendants did not file their cases in Missouri; instead their federal cases were transferred into the MDL by the action of the JPML. It is enough to acknowledge that in circumstances such as these, where defendants have voluntarily entered a state multiple times seeking their own financial gain, it does not offend the "traditional notions of fair play and substantial justice" to exercise jurisdiction. See World-Wide Volkswagen Corp., 444 U.S. at 292.

III.

Each defendant voluntarily entered Missouri more than once to negotiate settlement of their state court cases, a settlement process which ultimately resulted in their receiving compensation as part of the GMB settlement agreement. Their voluntary entry into Missouri for financial benefit was both the transaction of business as that term is used in the Missouri long arm statute and constitutionally sufficient minimum contacts under the Due Process Clause.

The order of the district court dismissing certain plaintiff's lawyers for lack of personal jurisdiction is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____