# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3353

_____

Hassanin Aly

*Plaintiff - Appellee*

v.

Hanzada for Import & Export Company, LTD

*Defendant - Appellant*

National Beef Packing Company, LLC

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: February 9, 2017
Filed: March 23, 2017

_____

Before SMITH,[1] GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

---

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

Hassanin Aly obtained a jury verdict and judgment for breach of contract against Hanzada for Import & Export Company, Ltd. Hanzada appeals, claiming the district court:[2] (1) lacked subject matter jurisdiction; (2) lacked personal jurisdiction; and (3) erred in not applying the statute of frauds. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Hanzada is an Egyptian company that imports and exports beef. Aly is a dual citizen of Egypt and the United States. Since 2001, he has resided in Ohio for 8 to 9 months of the year.

In Egypt, Aly met Samy Shaheen, an Egyptian citizen and an owner of Hanzada. Shaheen asked Aly to help Hanzada import beef from the United States. In 2005, Aly facilitated a contract for Hanzada to purchase beef from Greater Omaha Packing. Shipments began in early 2006. Hanzada compensated Aly with beef products.

In August 2006, Aly and Shaheen drove to Missouri to view the headquarters of National Beef, Inc. During the drive, Aly claims they made an oral contract: if Aly could "get National Beef for Hanzada," Hanzada would pay Aly $10 per metric ton of beef purchased. Aly says Shaheen reaffirmed the contract in Missouri near National Beef's headquarters and again on a plane ride to Kansas.

Aly established a relationship with National Beef. In August 2008, Hanzada began buying product from National Beef. Hanzada did not pay Aly under the terms of the oral contract.

---

[2]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

In 2012, Aly sued Hanzada for breach of contract. Hanzada moved to dismiss, asserting no subject matter or personal jurisdiction. The district court denied the motion. In its answer and amended answer, Hanzada again challenged jurisdiction. It moved for summary judgment, invoking Missouri's statute of frauds. The court denied the motion (and later Hanzada's motions for judgment as a matter of law on the same issue). A jury found in favor of Aly, awarding $1,591,286.60 in damages. Hanzada appeals.

II.

Hanzada argues the district court lacked subject matter jurisdiction because the parties were not diverse. This court reviews "whether diversity jurisdiction exists de novo," and factual findings for clear error. ***Branson Label, Inc. v. City of Branson, Mo.***, 793 F.3d 910, 915 (8th Cir. 2015). The plaintiff bears the "burden of proving subject matter jurisdiction." ***V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.***, 235 F.3d 1109, 1112 (8th Cir. 2000).

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of a State and citizens or subjects of a foreign state . . . ." **28 U.S.C. § 1332(a)(2)**. *See* **U.S. Const. Art. III, § 2** ("The judicial Power shall extend to all Cases . . . between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."). The district court found: (1) Aly is a citizen of Egypt and the United States; (2) when Aly sued, he was domiciled in Ohio; and (3) Hanzada is an Egyptian citizen. Hanzada did not challenge these findings. The district court concluded it had diversity jurisdiction because Aly was a citizen of a U.S. state, and Hanzada a citizen of a foreign state.

"In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within

the State." ***Newman-Green, Inc. v. Alfonzo-Larrain***, 490 U.S. 826, 828 (1989). Aly—a U.S. citizen, domiciled in Ohio—is a citizen of a State under § 1332(a)(2). Hanzada—a citizen of Egypt—is a citizen of a foreign state under that statute. This is a "civil action[] . . . between . . . [a] citizen[] of a State and citizen[] or subject[] of a foreign state" under § 1332(a)(2).

Hanzada believes Aly's Egyptian citizenship makes the parties non-diverse. Aly's Egyptian citizenship does not defeat jurisdiction. "An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State." ***Wachovia Bank v. Schmidt***, 546 U.S. 303, 318 (2006), *citing* ***Newman-Green***, 490 U.S. at 828 ("an individual is deemed a citizen of the State of her domicil"); ***Williamson v. Osenton***, 232 U.S. 619, 625 (1914) ("domicil is the 'technically preeminent headquarters' of a person; '[i]n its nature it is one'"). "For purposes of federal jurisdiction, 'domicile' and 'citizenship' are synonymous terms, and a person can have only one domicile at a time . . . ." ***Ellis v. Southeast Const. Co.***, 260 F.2d 280, 281 (8th Cir. 1958) (alterations omitted). The district court did not clearly err in determining Aly was a citizen of the United States, domiciled in Ohio. This made Aly a citizen of Ohio, and only Ohio, for purposes of § 1332(a) because an individual is a "citizen" of only one place.

The district court relied on an alternative ground, the Seventh Circuit's widely adopted *Sadat* rule: "only the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)." ***Sadat v. Mertes***, 615 F.2d 1176, 1187 (7th Cir. 1980). *See* ***Molinos Valle Del Cibao, C. por A. v. Lama***, 633 F.3d 1330, 1341 (11th Cir. 2011) (holding "that an individual who is a dual citizen of the United States and another nation is only a citizen of the United States for the purposes of diversity jurisdiction under § 1332(a)"); ***Sanchez v. Aerovias De Mex., S.A. De C.V.***, 590 F.3d 1027, 1028 n.1 (9th Cir. 2010) (applying *Sadat*); ***Frett-Smith v. Vanterpool***, 511 F.3d 396, 400 (3d Cir. 2008) ("We agree with the courts that have already decided this issue and hold that for purposes of diversity jurisdiction, only the American

nationality of a dual national is recognized."); ***Coury v. Prot***, 85 F.3d 244, 247 (5th Cir. 1996) ("For purposes of diversity jurisdiction, only the American nationality of a dual national is recognized."); ***Action S.A. v. Marc Rich & Co.***, 951 F.2d 504, 507 (2d Cir. 1991) (applying *Sadat*).  Applying the *Sadat* rule yields the same result:  Aly was a U.S. citizen, domiciled in Ohio; his Egyptian citizenship does not defeat jurisdiction.

The district court properly found diversity jurisdiction.

III.

Hanzada contends the district court lacked personal jurisdiction.  This court reviews personal jurisdiction de novo.  ***Fastpath, Inc. v. Arbela Techs. Corp.***, 760 F.3d 816, 819 (8th Cir. 2014).  When challenged, "the plaintiff bears the burden to show that jurisdiction exists." ***Id.*** at 820.  Where, as here, "no hearing is held on the motion," this court views the evidence most favorably to the plaintiff, resolving factual conflicts in the plaintiff's favor.  ***Id.***

Aly believes Hanzada waived this argument by participating in the lawsuit. *See* ***Yeldell v. Tutt***, 913 F.2d 533, 539 (8th Cir. 1990) (holding defendants waived personal jurisdiction by providing "no more than a bald assertion in their answer that the court lacked personal jurisdiction over them").  Hanzada did not waive its personal jurisdiction challenge.  It filed a motion to dismiss for lack of personal jurisdiction.  It then challenged personal jurisdiction two more times during the litigation.  Hanzada maintained a "continuing objection" to the court's jurisdiction. ***Id.*** *See generally* ***Dakota Indus., Inc. v. Ever Best Ltd.***, 28 F.3d 910, 914-15 (8th Cir. 1994) (reviewing a personal jurisdiction appeal where defendants filed and lost a motion to dismiss for lack of personal jurisdiction and then proceeded to trial).

On the merits, "[b]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," this court considers "whether the assertion of personal jurisdiction would violate" due process. *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015) (quotations and citations omitted). There must be sufficient "minimum contacts between a defendant and the forum state" so that "jurisdiction over a defendant with such contacts may not offend 'traditional notions of fair play and substantial justice.'" *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014), *quoting* *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). Determining "whether asserting personal jurisdiction over a party comports with due process," this court considers five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Eagle Tech.*, 783 F.3d at 1136. This court gives "significant weight to the first three factors." *Fastpath, Inc.*, 760 F.3d at 821.

Aly asserts that Hanzada, through Shaheen, had the following contacts with Missouri: (1) In 2006, Shaheen traveled with Aly to National Beef's headquarters in Missouri, where Shaheen agreed to pay Aly $10 per metric ton if he could "get National Beef for Hanzada;" (2) At an unspecified time, Shaheen and Aly flew on National Beef's private plane to Missouri; and (3) In 2010, Shaheen met with Aly and the president of National Beef's international division, at its headquarters in Missouri, to discuss the quantity of exports. Hanzada does not contest these contacts, conceding "[a] few brief visits for a couple of hours over many years to National Beef's headquarters in Missouri by . . . Shaheen and Aly."

The first and second personal jurisdiction factors consider the nature, quality, and quantity of Hanzada's Missouri contacts. The district court said:

-6-

In arranging the contract at issue, Hanzada acquired strong, numerous, and relevant contacts in Missouri. Hanzada's representative [Shaheen] traveled to Missouri, where he contacted Aly. He negotiated and concluded the contract in Missouri. The contract's focus was establishing a business relationship between Hanzada and National Beef, a Missouri corporation. As Hanzada expected and intended, the contract obliged Aly to network with National Beef executives in Missouri for Hanzada's benefit. Thus, the first two prongs favor the exercise of personal jurisdiction.

As the district court found, Hanzada entered a contract in Missouri to establish a business relationship with National Beef, a Missouri corporation. The contract envisioned future transactions between Hanzada, Aly, and National Beef. Hanzada's representative, Shaheen, returned to Missouri at least twice to meet about the Missouri-made contract. Hanzada's "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." ***Walden v. Fiore***, 134 S. Ct. 1115, 1122 (2014). The contact was substantial—forming a contract to establish a business with a Missouri corporation. *See **Downing***, 764 F.3d at 912 (finding contacts with the forum were "frequent and substantial" where an attorney made trips "attempting to settle [his] state court cases and to secure personal compensation"), *citing **Chromalloy Am. Corp. v. Elyria Foundry Co.***, 955 S.W.2d 1, 4-5 (Mo. banc 1997) (holding two trips to Missouri are "sufficient minimum contacts" for personal jurisdiction where the purpose of the trips was to initiate and further the purchase of a foundry from a Missouri corporation). The district court did not err in finding the first two factors weigh in favor of jurisdiction.

The third factor considers the relationship between Hanzada's Missouri contacts and this lawsuit—whether "the defendant purposely directs its activities at the forum state and the litigation results from injuries relating to the defendant's activities in the forum state." ***Id.*** at 913 (alterations omitted). Hanzada entered a contract in Missouri to conduct business with a Missouri corporation. It later

discussed terms of the contract (the amount of beef sold) in Missouri. As the district court found, "[t]he Complaint's sole cause of action is for breach of contract," which "is predicated exclusively on Hanzada's breach of its oral contract with Aly, which gave rise to several Missouri contacts." Although Hanzada argues it did not breach the contract in Missouri, "proximate causation between the contacts and the cause of action is not required." *Id.* The district court properly found this factor weighs in favor of jurisdiction.

The fourth factor considers Missouri's interest in providing a forum for its residents. The district court found, without authority, that "Missouri favors protecting contractual expectations arising within its borders." Because neither party is a Missouri resident, this factor does not favor jurisdiction.

The fifth factor considers the convenience to Aly and Hanzada of litigating in Missouri. Missouri is not a convenient forum for either party, one of whom resides in Ohio and the other in Egypt. As the district court found:

> As an Egyptian business association with only Egyptian principals, Hanzada stands to incur great cost and inconvenience in conducting transnational discovery and possibly having to fly witnesses and executives from Egypt to defend a lawsuit in Missouri. This factor opposes a finding of personal jurisdiction.

Three of the five factors—including all three of "significant weight"—favor jurisdiction. The district court properly exercised personal jurisdiction over Hanzada.

IV.

Hanzada asserts the district court should have granted its motions for summary judgment and judgment as a matter of law based on the Missouri statute of frauds.

This court reviews the applicability of the statute of frauds de novo. *Melford Olsen Honey, Inc. v. Adee*, 452 F.3d 956, 961 (8th Cir. 2006).

Under Missouri law, "[n]o action shall be brought . . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing . . . ." **Mo. Rev. Stat. § 432.010**. Where a plaintiff has fully performed under the contract, the statute of frauds is no defense:

> [T]he great weight of authority supports the rule that the statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue on the contract in a court of law.

*Koman v. Morrissey*, 517 S.W.2d 929, 935-36 (Mo. 1974), *quoting* **37 C.J.S. Frauds, Statute of § 251**, p. 762. Finding Hanzada breached a contract with Aly, the jury found Aly fully performed under the contract. Because he fully performed, the statute of frauds does not apply

Even if Aly had not fully performed, the statute of frauds does not apply. As the district court found, the "key question" is "whether the contract could be performed within one year." *See Crabb v. Mid-Am. Dairymen, Inc.*, 735 S.W.2d 714, 716 (Mo. banc 1987) ("Our cases hold, consistently, that a contract is not unenforceable under the statute of frauds if it could possibly be performed in compliance with its terms within one year, even though the actual performance is expected to continue over a much longer period."). Hanzada argues the contract—requiring it to pay Aly $10 per metric ton received from National Beef—could never have been performed within one year because of the "involved process" of establishing a relationship and exporting beef to Egypt. Although many steps were required before National Beef began selling beef to Hanzada, there is no evidence it was impossible to perform the agreement fully within one year. *See Vess*

-9-

***Beverages, Inc. v. Paddington Corp.***, 886 F.2d 208, 212-13 (8th Cir. 1989) (interpreting Missouri law as holding that where an oral contract is for an indefinite period of time, it does not violate the statute of frauds).

The district court properly found the statute of frauds inapplicable.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____