Mike Murphy, Judge dissenting.
I respectfully disagree with the result reached by the majority in this case. I would hold that in light of Bristol-Myers , our original holding would not change, and that the circuit court's dismissal of Lawson's complaint against Simmons for lack of personal jurisdiction should be reversed and remanded.
As the majority correctly states, the Supreme Court issued a grant, vacate, and remand (GVR) order. By granting certiorari, vacating our decision, and remanding the case to us, the Supreme Court is not indicating that our previous decision is probably erroneous. A GVR order does not mean that the Court has reached any conclusion concerning the merits of the lower court's action. Waddill v. Anchor Hocking, Inc. , 190 Or.App. 172, 78 P.3d 570, 573 (2003). Rather, the order indicates only that the intervening decision, in this case Bristol-Myers , has changed the legal context in a way that, the Court believes, requires the lower court to determine whether its previous decision remains good law, id. , which I would find that it does.
I would hold that Bristol-Myers is distinguishable from the case at hand. First, procedurally, Bristol-Myers concerned a mass-tort action by nonresident plaintiffs. Here, we do not have a mass-tort or class action with multiple plaintiffs trying to sue in state court. Rather, we have a single plaintiff who is a resident of the forum state.
Next, addressing the substantive concerns, I think that the analysis in Bristol-Myers can be reconciled with the five-factor test we have applied and that the two tests are not mutually exclusive. The Eighth Circuit has long employed the five-factor test as guidance for sufficient minimum contacts. See Aftanase v. Econ. Baler Co. , 343 F.2d 187, 197 (8th Cir. 1965) ; see also Land-O-Nod Co. v. Bassett Furniture Indus., Inc. , 708 F.2d 1338, 1340 (8th Cir. 1983). Our supreme court has found this test to be helpful.
*197 Hotfoot Logistics, LLC , 2014 Ark. 460, at 7, 447 S.W.3d at 596. The Eighth Circuit has explained that the third factor-the relationship of the cause of action to the contacts-is used to distinguish between specific and general jurisdiction. Burlington Indus., Inc. v. Maples Indus., Inc. , 97 F.3d 1100, 1102 (8th Cir. 1996). There has never been a set standard for determining this factor. See Ryne H. Ballou, Civil Procedure-Be More Specific: Vague Precedents and the Differing Standards by Which to Apply "Arises Out of or Relates to" in the Test for Specific Personal Jurisdiction , 35 U. Ark. Little Rock L. Rev. 663 (2013) ; see also John V. Feliccia, Bristol-Myers Squibb Co. v. Superior Court: Reproaching the Sliding Scale Approach for the Fixable Fault of Sliding Too Far , 77 Md. L. Rev. 862, 899 (2018). However, three dominant approaches have emerged: a strict proximate-cause standard, a more relaxed "but for" causation interpretation, and a "substantial connection" standard, which examines "whether the tie between the defendant's contacts and the plaintiff's claim is close enough to make jurisdiction fair and reasonable." Myers v. Casino Queen, Inc. , 689 F.3d 904, 912 (8th Cir. 2012). It is well established that each case is unique and that the underlying principles are not prone to mechanical application. See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement , 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (holding "[i]t is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative").
Bristol-Myers does not state that one of these specific tests applies or that one is superior. The Bristol-Myers Court rejected the specific California sliding-scale approach, but it was silent as to the other sufficient minimum-contacts tests that different circuits employ. In fact, in McGill v. Conwed Corp. , a Minnesota case, the United States District Court employed the Eighth Circuit five-factor test and also cited Bristol-Myers when determining whether personal jurisdiction existed over the nonresident defendant.[3] 2017 WL 4534827, at *8 (D. Minn. 2017).
It is telling that most of the cases that have cited Bristol-Myers are mass tort litigation and class actions involving products-liability claims. See Weisheit v. Rosenberg & Assocs., LLC , 2018 WL 1942196 (D. Md. 2018) ; Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc. , 2018 WL 1377608 (E.D. La. 2018) ; Molock v. Whole Foods Mkt., Inc. , 297 F.Supp.3d 114 (D.D.C. 2018) ; Sloan v. Gen. Motors LLC , 287 F.Supp.3d 840 (N.D. Cal. 2018), order clarified, 2018 WL 1156607 (N.D. Cal. 2018). Another one of the few cases, besides McGill , supra , that did not involve multiple plaintiffs held that Bristol-Myers was not applicable in the case because the plaintiff was a resident of the forum state. Kowal v. Westchester Wheels, Inc. , 417 Ill.Dec. 888, 89 N.E.3d 807, 819 (2017), appeal denied , 419 Ill.Dec. 804, 94 N.E.3d 673 (Ill. App. Ct. 2018). Similarly, Lawson is a single plaintiff with a single claim and is a resident of Arkansas.
In the original opinion our court relied heavily on Myers v. Casino Queen, Inc. , 689 F.3d 904, 913 (8th Cir. 2012). There, the Eighth Circuit concluded that while the appellant's injuries did not arise out of Casino Queen's advertising activities in a strict proximate-cause sense, his injuries were nonetheless related to Casino Queen's advertising activities because he *198 was injured after responding to the solicitation. Casino Queen focuses on "reasonableness," and while the appellant was aware of their advertising, there was no requirement that his presence at the time of the tort was the direct result or "proximate cause" of a specific ad targeting him that caused him to go to the casino. Similarly, Lawson was generally aware of Simmons, and the fact that she did not go to the store the day she got injured in reliance on a specific ad does not defeat our prior analysis. As the Eighth Circuit explained,
When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.
Id.
Based on the standards and factors discussed above, I would adhere to our previous conclusion. Bristol-Myers did not change the law, as it expressly stated, see Bristol-Myers , 137 S.Ct. at 1781 ("Our settled principles ... control this case."); id. at 1783 ("Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up."). Bristol-Myers merely reiterated precedent and did not alter established jurisprudence on specific personal jurisdiction. Our case is distinguishable from Bristol-Myers , and is instead on all fours with Casino Queen . Under the doctrine of stare decisis, I cannot ignore the precedent of Casino Queen and the application of the Eighth Circuit five-factor analysis, which our courts view with favor. Accordingly, I would reverse the circuit court's order granting Simmons's motion to dismiss.
Vaught, J., joins.

The court ultimately found that specific jurisdiction was lacking because the contacts belonged to a third party connected with the defendant, and not the defendant itself. Here, there are no third parties.